**E-FILED**
Monday, 07 February, 2005  10:54:49 AM
Clerk, U.S. District Court, ILCD

# The State of Wisconsin

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF HEALTH

## License, Permit or Registration

The person, firm, or corporation whose name appears on this certificate has complied with the provisions of the Wisconsin statutes and is hereby authorized to engage in the activity as indicated below.

**NOT TRANSFERABLE**

| | EXPIRATION DATE | I.D. NUMBER |
|---|---|---|
| | 6/30/99 | 03 1000123 |

**ACTIVITY**

HOTEL
5 ROOMS

**LICENSEE MAILING ADDRESS**

ERICSON DONNA
3729 39TH S COURT
MOLINE  IL  61265

**BUSINESS/ESTABLISHMENT ADDRESS**

HEMLOCKS
8991 THOROUGHFARE
MINOCQUA  WI  54548

DOH 7216A

REFER, TRANSF, 13, BKAPPEAL, CLOSED

# U.S. District Court
## Central District of Illinois (Rock Island)
## CIVIL DOCKET FOR CASE #: 4:04-cv-04043-JBM
### Internal Use Only

Ericson v.
Assigned to: Chief Judge Joe Billy McDade
Demand: $0
Cause: 28:1334 Bankruptcy Appeal

Date Filed: 06/08/2004
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal
(801)
Jurisdiction: Federal Question

**Debtor**

----------------------

**Donna J Ericson**                    represented by **Donna J Ericson**
967 40th Street
Moline, IL 61265
309-796-3828
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 06/08/2004 | 1 | BANKRUPTCY APPEAL (RK, ilcd) (Entered: 06/08/2004) |
| 06/08/2004 | 2 | BANKRUPTCY BRIEFING LETTER mailed to parties re: Bankruptcy Appeal; appellants brief due 6/23/04 (RK, ilcd) (Entered: 06/08/2004) |
| 06/16/2004 | 3 | MOTION by debtor Donna J Ericson to extend time to file brief and Notice of Change of Address (DK, ilcd) (Entered: 06/16/2004) |
| 06/22/2004 | | MINUTE-ENTRY: by Chief Judge Joe B. McDade granting motion to extend time to file brief [3-1]. ;Appellant's brief due 7/23/04 (cc: all counsel) (HK, ilcd) (Entered: 06/22/2004) |
| 06/23/2004 | | MINUTE-ENTRY: by Chief Judge Joe B. McDade. This case is transferred to the Rock Island Division . The new case number in Rock Island is 04-4043. All future pleadings should be filed in Rock Island and bear the 04-4043 case number. Filed mailed to Rock Island division. (cc: all counsel) (DK, ilcd) (Entered: 06/24/2004) |
| 06/23/2004 | | Original file, transfer order received from Peoria [ 04-1181]. Case assigned to Chief Judge Joe B. McDade. (DK, ilcd) (Entered: |

| | | |
|---|---|---|
| | | 06/24/2004) |
| 07/26/2004 | ●4 | NOTICE of Change of Address by Donna J Ericson (TP, ilcd) (Entered: 07/26/2004) |
| 07/26/2004 | ●5 | MOTION for Extension of Time to File Brief for Cause by Debtor Donna J Ericson. Responses due by 8/9/2004 (TP, ilcd) (Entered: 07/26/2004) |
| 08/03/2004 | ● | ORDER granting [5] Motion for Extension of Time to File. Plaintiff's appellant brief for her bankruptcy appeal is due by or on August 13, 2004. This is the second time she has been granted additional time to file her brief. Plaintiff is warned that no further extensions will be given and that failure to submit her brief by August 13, 2004, will result in dismissal of her case for failure to prosecute. Entered by Judge Joe Billy McDade on 8/4/2004. (HL, ilcd) (Entered: 08/03/2004) |
| 08/10/2004 | ●6 | Letter: From Donna Ericson regarding Bankruptcy case #03-83019; Statement of Issues to be presented (TP, ilcd) (Entered: 08/17/2004) |
| 08/10/2004 | ●7 | Letter: From Donna Ericson regarding Appellant's Designation of items (TP, ilcd) (Entered: 08/17/2004) |
| 08/10/2004 | ●8 | Combined MOTION for Extension of Time to provide documents and complete payment in full of costs by Debtor Donna J Ericson. Responses due by 8/24/2004 (TP, ilcd) (Entered: 08/17/2004) |
| 09/01/2004 | ● | ORDER striking [8] Motion for Extension of Time to File. It appears that this motion was incorrectly filed in this Court and that the subject matter relates to the Appellant's proceedings in bankruptcy court. Entered by Judge Joe Billy McDade on 9/1/2004. (HL, ilcd) (Entered: 09/01/2004) |
| 12/01/2004 | ●9 | ORDER Entered by Judge Joe Billy McDade on 12/01/04. DISMISSING CASE for failure to prosecute. The decision of the Bankruptcy Court is Affirmed. (TP, ilcd) (Entered: 12/02/2004) |
| 12/03/2004 | ●10 | JUDGMENT is entered and the decision of the Bankruptcy Court is Affirmed. (TP, ilcd) (Entered: 12/03/2004) |

4:04-cv-04043-JBM    Case # 03-83019

| 07/19/2004 | 86 | Notice of Change of Address Filed by Debtor Donna J Ericson . (court, pkei) (Entered: 07/20/2004) |
|---|---|---|
| 07/23/2004 | 87 | Order Granting Motion to Extend/Shorten Time (Related Doc # 85) Signed on 7/23/2004. (court, pkei) (Entered: 07/23/2004) |
| 07/25/2004 | 88 | BNC Certificate of Mailing - PDF Document (RE: related document(s)87 Order on Motion to Extend/Shorten Time) No. of Notices: 4. Service Date 07/25/2004. (Admin.) (Entered: 07/26/2004) |
| 08/10/2004 | 90 | Motion to Extend/Shorten Time Filed by Debtor Donna J Ericson (court, pkei) (Entered: 08/11/2004) |
| 08/10/2004 | 91 | Statement of Issues on Appeal, Filed by Debtor Donna J Ericson (RE: related document(s)63 Notice of Appeal). (court, pkei) (Entered: 08/11/2004) |
| 08/10/2004 | 92 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Debtor Donna J Ericson (RE: related document(s)63 Notice of Appeal). (court, pkei) (Entered: 08/11/2004) |
| 08/11/2004 | 89 | Statement of Charges Amount Due: $44.50 in copy fees (court, pkei) (Entered: 08/11/2004) |
| 09/24/2004 | 93 | Statement of Charges Amount Due: $1.50 (court, ckey) (Entered: 09/24/2004) |
| 12/13/2004 | 94 | Final Order By District Court Judge Joe B McDade, Re: Appeal on Civil Action Number: , appeal dismissed Signed on 12/01/2004. (court, ktra) (Entered: 12/13/2004) |
| 12/13/2004 | 95 | FINAL DECREE. The estate of this Chapter 13 debtor(s) has been fully administered. The deposit required by the plan has been distributed. IT IS ORDERED the Trustee is discharged as Trustee of the estate, the bond is cancelled, and this Chapter 13 Bankruptcy case is closed . (court, ktra) (Entered: 12/13/2004) |
| 12/13/2004 | | Bankruptcy Case Closed (court, ktra) (Entered: 12/13/2004) |
| 12/13/2004 | | Disposition of Adversary 1-03-ap-8157 Judgment For Case Dismissed (court, pkei) (Entered: 12/13/2004) |
| 12/13/2004 | | Adversary Case 1-03-ap-8157 Closed (court, pkei) (Entered: 12/13/2004) |

**IT IS SO ORDERED.**

**SIGNED THIS: July 20, 2004**

**GERALD D. FINES**
**UNITED STATES CHIEFBANKRUPTCY JUDGE**

---

## U.S. BANKRUPTCY COURT
### Central District of Illinois

In re:        Donna J. Ericson                           Case No.    03-83019

Debtor(s)

### ORDER

_____ A hearing having been held , 200* on the following matters:

  X    The following having been filed:

    1) Motion by Donna Ericson to Extend Time to Pay Appeal
       Charges and to Supplement Appeal Designation

    2)

    3)

    4)

    5)

    6)

028090

IT IS ORDERED THAT:

| Matter | Action |
|--------|--------|
| 1 | Allowed** |
|  | Denied |
|  | Dismissed |
|  | Withdrawn |
|  | Continued to *, 200* |
|  | Continued * days |
| X | Other: Debtor is directed to file a Designation of Additional Items to be included in appeal record within 21 days of the date of this order. The time to pay appeal charges is extended for an additional 21 days. |

###

# HANLON & BARBER
### LAWYERS
SUITE 816 · HILL ARCADE BUILDING
230 EAST MAIN STREET
GALESBURG, ILLINOIS 61401

JOHN M. HANLON
RICHARD E. BARBER

October 2, 1996

TELEPHONE 309-342-4190
FAX 309-342-6108

Mr. Phil Anderson
U.S. Trustee's Office
Room 1100, Becker Bldg.
401 Main Street
Peoria, IL 61602



Dear Phil:

I recommend that this case be dismissed pursuant to 707(b).
The debtor can pay his debts within approximately 18 months under
a Chapter 13 Plan.

His income is from a pension and social security benefits.  He
receives about $997.00 from Social Security and $3,148.00 from his
pension.  That's a total of $4,145.00.

His expenses are inaccurate.  First, he does not pay rent.  He
lives in a house that he owns.  He said Schedule J reflects the
rent he expects to pay.

He admits that his gas expenses are exaggerated ($250.00 for
a retired gentlemen seems excessive).

He confirmed that his alimony is correct.

He shows an expense of $675.00 and $206.00 each month but
said, at the Meeting of Creditors, he doesn't know what those
figures relate to now.  Thus his monthly expenses are approximately
$2,574.00 (that's allowing him $100.00 for gas each month).

When you subtract his expenses, from his income, the debtor
has a net income of approximately $1,571.00 each month.  This is
sufficient to fund a Chapter 13 Plan within a year and a half.

Exhibit 1

Mr. Phil Anderson
October 2, 1996
Page 2.

Moreover, it appears from the debtor's own schedules that there is equity in much of the real estate which he owns. He also may have substantially understated the value of his personal property.

His unsecured debt appears to be all consumer debt. I should also note that $10,000.00 of the unsecured debt is owed to his present wife and that she would probably forgive this amount if the case was dismissed.

Very truly yours

Richard E. Barber
Chapter 7 Trustee

REB/cm
cc: Frank Galvin

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

FILED

===============================

IN THE MATTER OF:                  .  Case #03-83019
                                   .
DONNA ERICSON                      .  Danville, Illinois
                                   .  **March 24, 2004**
                      Debtor       .  8:25 a.m.

===============================

**TRANSCRIPT OF TELEPHONIC CONFERENCE CALL ON THE HEARING FOR: MOTION BY DEBTOR TO HAVE THE HONORABLE GERALD D. FINES EXCUSE HIMSELF FROM HEARING THESE MOTIONS; MOTIONS TO DISMISS FILED BY THE TRUSTEE AND BY R. VICTOR AND GENEVIEVE HANKS RE: 341 MEETING ANSWERS; MOTION FILED BY DEBTOR FOR TURNOVER ORDER FROM THE COURT BEFORE THE HONORABLE GERALD D. FINES, J.U.S.B.C.**

<u>APPEARANCES</u>:

For the Debtor:                    DONNA ERICSON, Pro Se
                                   1125  26th Street

For the Debtor:                    DONNA ERICSON, Pro Se
                                   1125  26th Street
                                   Moline, IL  61256

For Hanks:                         THOMAS A  BLADE, ESQ.
                                   620  17th Street
                                   Moline, ILL  61256

Standing Trustee:                  RICHARD A  BOWERS, ESQ.
                                   P.O. Box 3760
                                   Rock Island, IL  61204

Electronic Sound Recording Operator:  Unknown

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-6420      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

1           THE COURT:   This is Judge Fines.   This call is being
2   recorded.   State your name for the record.

3           MR. BLADE:   I am Thomas Blade.   I am attorney of
4   record for R. Victor Hanks and Genevieve M. Hanks in this
5   proceeding.

6           MR. BOWERS:   I'm Richard Bowers, the standing Trustee
7   in the matter.

8           MS. ERICSON:   Donna Ericson, *pro se.*

9           THE COURT:   Okay, this is a hearing on Trustee's
10  motion to dismiss, and two motions to dismiss by creditor
11  Hanks, and then I -- there is also a request for turnover filed
12  by Donna Ericson.

13          Now let me tell you how we're going to proceed.   I've
14  read everything.   I know what this is all about.   I'm going to
15  ask the Trustee a couple questions.   I'm going to ask Mr. Blade
16  a couple of questions.   I'm going to give Ms. Ericson a chance
17  to respond to these motions to dismiss.

18          The first thing I want to raise is that yesterday Ms.
19  Ericson filed an emergency *ex parte* motion requesting Judge
20  Fines to disqualify himself from the cause.   It's about a --
21  oh, about a two-page or page-and-a-half motion.   She faxed it
22  over.   I'm not sure you -- did you file it, Ms. Ericson?

23          MS. ERICSON:   No, I just thought it would be
24  respectful when you have a chance, to see what happens.

25          THE COURT:   Okay.   Well, let me tell you, I've

1 reviewed it, and I can't think of any reason why I should step
2 down from this case, so that motion is denied, and I'm going to
3 go ahead with this hearing. And I understand that -- and I may
4 be incorrect on this, but I understand that there's a 341
5 hearing scheduled --

6          MR. BLADE:   For tomorrow at nine a.m.

7          THE COURT:   Right.

8          MR. BOWERS:   (unclear) sir.

9          THE COURT:   I'll tell you, I'm going to continue
10 that generally until I've had a chance to rule on these pending
11 motions.

12          MR. BOWERS:   Thanks.

13          THE COURT:   So looking first at the Trustee's
14 motion--

15          MS. ERICSON:   Excuse me, sir, I didn't understand
16 that.   What was it you said about tomorrow?

17          THE COURT:   I'm going to continue that generally.
18 There will not be a 341 hearing tomorrow.

19          MS. ERICSON:   I figured that.

20          THE COURT:   I want to rule on this case first.
21 First on the Trustee's motion -- the Trustee filed a motion to
22 dismiss on July 11, 2003. I've read everything. I understand
23 the motion. I understand your points. I have this question to
24 ask:   What about payments made by the debtor in this case?

25          MR. BOWERS:   Well, Your Honor, the debtor has eight

 1  payments due.  She paid four payments of $400 for $1,600.  She

 2  has four payments in arrears as of today.

 3            THE COURT:  How many in arrears?

 4            MR. BOWERS:  Four.

 5            THE COURT:  Okay.

 6            MR. BOWERS:  Four months.

 7            THE COURT:  Anything else you want to say about your

 8  motion?  I understand it.  It's not complicated.

 9            MR. BOWERS:  I don't believe at this time, Your

10  Honor.

11            THE COURT:  Okay.  Now to Mr. Blade.  You filed two

12  motions.

13            MR. BLADE:  Yes.

14            THE COURT:  One on -- hold on just a second.

15            MR. BLADE:  Yes.

16            THE COURT:  You filed a motion to dismiss on

17  October--

18            MR. BLADE:  One relates to the 341 --

19            THE COURT:  Right.

20            MR. BLADE:  -- hearing answers.  Since that -- since

21  there's still a pending hearing on 341, which you just

22  continued, you may find it appropriate to continue the motion

23  to dismiss.

24            THE COURT:  I'm going to rule on that.

25            MR. BLADE:  Okay.

03-83019                                                      3-24-04

 1            THE COURT:    I'm going to rule on everything that's
 2  before me.

 3            MR. BLADE:    Yes.

 4            THE COURT:    And you filed a motion to dismiss on
 5  October 20.  I've read that, and I understand what you say on
 6  that -- that motion.  They you filed another motion to dismiss
 7  on November 10th, 2003, and with that you submitted a brief.  I
 8  understand the motion, I understand the brief, I understand the
 9  arguments, and --

10            MR. BLADE:    And I have nothing to add to that.

11            THE COURT:    Okay.  You have nothing to add to that.
12  Okay.  What I'm going to do -- this hearing -- I don't know
13  whether I told you in the beginning, but it started a little
14  bit before 8:30.  I have allowed not more than one hour for
15  this hearing, so I want all the parties involved in this
16  conference call to keep that in mind.  I want to concentrate on
17  what's been filed, and the answers, and that's it.

18            Now, Ms. Ericson, what's your response to the motions
19  to dismiss?  I've -- first of all, I've read everything you
20  filed, so I understand --

21            MS. ERICSON:    I don't even know what you have in
22  your -- in front of you that I filed, because on December 11th
23  I had a motion to dismiss their filings, and Judge Perkins on
24  December 11th threw it out saying it was nonsense, which in it,
25  I did a direct comparison.

1            THE COURT:    Okay, but I have your complete file
2  here.    It's thick, and I've read everything that you've filed,
3  so I'd be happy to hear anything you want to say.

4            MS. ERICSON:    Well, I believe that the -- number
5  one, in response to Mr. Bowers, I do not believe I'm in arrears
6  because there was no amount set up.    Judge Perkins himself even
7  said on the record that we couldn't determine that amount until
8  the state case was ruled on.

9            I stopped the payments because they were supposed to
10  be -- it was supposed to be a trust for consideration of $400 a
11  month for being in this house, so that I didn't have to move.
12  I had to find a way to have a trust set up.    Until it's
13  determined who's rightfully entitled to any monies from this
14  property, which would be John House, All-Counts Partners,
15  (phonetic) or R. Victor Hanks.    That hasn't been determined, so
16  I do not believe I'm in arrears at all, but I stopped because
17  of things that were said in the Court, and I went and made a
18  deposit where it's secured.

19            THE COURT:    Okay.

20            MS. ERICSON:    They were only -- it was only $400 a
21  month.    It was called consideration for being in this residence
22  until it was ruled on who was the rightful owners of the money,
23  and that goes into Mr. Hanks's bankruptcy cases that he has in
24  the -- or had in the Bankruptcy Court, and the Treasurer's
25  Office in Rock Island County says he's still protected by that

 1 | bankruptcy, which is hard to believe, in the sixth year, but --
 2 |          THE COURT:   Okay.
 3 |          MS. ERICSON:  -- that's what they say.
 4 |          THE COURT:   Anything further?
 5 |          MS. ERICSON:   Yes.  I do not believe -- I think that
 6 | the motions to dismiss are based on two -- there's only two
 7 | issues that I could see.
 8 |          THE COURT:   Okay.
 9 |          MS. ERICSON:   One was claiming the Fifth Amendment
10 | privilege, and the other one was saying that I had filed too
11 | many times.  I don't believe that I have done anything wrong on
12 | the Fifth Amendment privilege because I went from your
13 | direction in the opinion that you wrote.  There are bankruptcy
14 | cases available.  Mr. Blade didn't submit any, and it's the
15 | *Connelly* case, based on *Fisher*, and the *Rogers* case, as you
16 | wrote.  I followed your direction.  (Phonetic case citations)
17 |          The Trustees did not follow your direction, because
18 | in your opinion and order you told them that they would have to
19 | request immunity from the District Court.  They did not.  I
20 | tried, but Mr. Heaton, Mr. Lewis (phonetics) felt that I should
21 | have been granted immunity.  He also told me that (unclear,
22 | microphone being bumped) work there, and that you surely
23 | thought there might have been something criminal, so it got
24 | kicked over -- which there isn't.  It got kicked over to a Mr.
25 | Heaton.  I talked to him later.  It was a one-liner.  He said I

1 didn't have any information to go on, so there was nothing else
2 I could do.

3 So on the immunity there were overlapping issues. I
4 was asked about previous things that was on the tape at the
5 end, by James McGill, and I was just protecting myself. I
6 believe that by the previous rulings in my cases, I haven't
7 done anything to abuse bankruptcy filings. I'm probably three
8 months away from the six-year issue, and in the 1998 -- it was
9 called 98-82365 case -- that was not officially closed until
10 February, about February 25th or 6th of 2003.

11 There's a lot of, I think, breakdown in the Trustee
12 system. I do not believe that I have abused any privilege, but
13 I believe I have been abused. I think there is a breakdown in
14 the system, and to put a bar on me, after being stripped of my
15 assets, which I was never bankrupt -- Mr. Ericson never was
16 either, and we have a lot of money, and it was all about
17 lawyers. And that's what it's about -- lawyers.

18 I have no health insurance. I've had open-heart
19 surgery. My thumbs are locked up. It will be $6,000 a thumb
20 to have the operation where they work properly. I was injured
21 here in this house by work that I did. I was told I was sold
22 this house. I was defrauded. I'm one of probably hundreds of
23 people that this has happened to with Mr. Hanks, so I'm told.

24 Also, I wrote it up, but then I didn't read it. I
25 would say that if something adverse happens to me in this

1 ruling, then I have been misled by the Court. I'm an honest
2 person. I tell the truth. I didn't have any reason to lie,
3 and I still don't. So -- what else?

4         Oh, well, I've testified over an eight-and-a-half
5 period time frame, over and over and over; and throughout these
6 cases Mr. Bowers was present -- many lawyers -- and I only -- I
7 would like to correct something in Judge Fines's -- your
8 written opinion and order -- one or the other. I only had one
9 attorney in Case 98-82365. It was Philip Koenig. He was in
10 for about four months. He withdrew so that he could file and
11 get his money, but he was paid exorbitant fees. He was
12 rewarded for some very bad behavior.

13         I only had one lawyer, and ever since December 17th,
14 1998 I've had to defend myself. I filed a motion and objection
15 for the hearing. I was not allowed to have my hearing. Judge
16 Altenberger just let him out. Excuse me.

17         Let me see what else I have here. I believe it was
18 at -- it's a big mess, but I don't believe that I have done
19 anything to abuse any privilege. I know I haven't. I know
20 what's happened to me. I know these are spin-offs from the
21 original, quote, "alleged fraudulent filing" in 1996, of Robert
22 L. Ericson. And to bar me three months away from the six-year
23 -- under the given circumstances, would be an act of cruelty, I
24 believe, an undue hardship.

25         So I don't believe I have anything else at this time.

1          THE COURT:    Okay.   Trustee, anything further?

2          MR. BOWERS:    Well, Your Honor, I don't quite

3  understand some of the things Ms. Ericson mentioned.   But I

4  think that as far as what her money is doing, we do not set up

5  individual debtor accounts for each individual debtor.  We put

6  our funds into an escrow account, at which time when a plan is

7  confirmed, the monies are transferred into the active account

8  and paid out to the creditors, all within sixty to ninety days

9  of filing, except in Ms. Ericson's case, we're still eight

10  months away from the original filing date, and still don't have

11  a confirmed plan.

12          Plus, the fact that I think the rules show that the

13  payments are to begin or shall begin within thirty days of the

14  filing.   There was nothing said about the debtor taking it upon

15  themselves to set it up in separate accounts instead of putting

16  it into the plan system.  And also, the plan that she claims

17  that she filed, it does state in here that she intends to pay

18  for twenty-four months -- it says she is going to pay amounts

19  as are necessary to complete payment of all debts within

20  twenty-four months or less.

21          I don't quite understand -- she considers $400 a

22  month to be her payments, yet if -- if the creditors are -- Mr.

23  Blade's clients -- it's my understanding that their payments

24  are $400 a month, which leaves no monies available for

25  administration costs.

1            Also, she did receive a Chapter 7 discharge within
2  the last six years, and according to the terms of her plan,
3  she's mentioning twenty-four months -- my understanding of the
4  Bankruptcy Rules are if you're paying less than thirty-six
5  months, you must pay off 100 per cent to all creditors.  She
6  has several creditors that she listed, all of which are being
7  disputed, and I find this case really not able to administer
8  because I don't how it's supposed to be administered, and for
9  right now I think that's my statement.

10           THE COURT:   Okay.

11           MS. ERICSON:   Your Honor, could I respond to that,
12  please?

13           THE COURT:   Go ahead.

14           MS. ERICSON:   Richard Bowers was in Court in August,
15  and if he was paying attention to what Judge Perkins said, it
16  was at Judge Perkins's lead and suggestion, and he said, "Mrs.
17  Ericson, you said you were willing to put $400 a month for
18  consideration for being in the residence, and that's when the
19  payments began of $400 a month."  If he were listening, it was
20  I was following what Judge Perkins suggested to do, and I
21  adhered to his suggestion.

22           Also, I was left -- totally left -- over $150,000 of
23  my life's work was given to lawyers, gone; and I was left just
24  totally abandoned without a lawyer to give me any advice.  They
25  were paid.  I was misrepresented.  I was left.

1          So on these claims that Mr. Bowers says are disputed,
2  you better believe it, because I don't even know what happened
3  to me.  On the GMAC thing, that was a -- reaffirmed and proven
4  by the Court to be okay.  They won't give me the title, and
5  there's an issue of $400.  I don't know about this bankruptcy,
6  these technicalities.  I was just left.

7          On the Olsons's auto, Mr. Blade also represents them.
8  I tried to give them the money.  They wouldn't take it.  I was
9  left with a lot of the work unfinished, and never, ever have I
10 had any intentions of not paying anyone.  I'm not trying to get
11 out of anything, but I've been left in a big fat mess, and
12 eight and a half years of my life have been taken away from me
13 wrongfully so, because of that fraudulent filing in 1997.

14         I've been used.  I'm a woman.  It's disparate
15 treatment, and I've been left -- I am nothing but a host for
16 money to other people, and that is wrong.  The income tax
17 filings also, that's another point -- in Bankruptcy Court it
18 happens all the time.  It's my understanding it's called a
19 Chapter 20 where you add 7 --a Chapter 7 plus a Chapter 13.
20 The lawyers go in all the time, and they do Chapter 7s.  People
21 are -- their debts are gone, which I wasn't even bankrupt.  No
22 way, with $360,000 equity.  Nothing was in foreclosure.

23         But then you go in, they come back in, and when
24 there's tax problems -- and I have tax problems -- Judge
25 Perkins told -- I have letters from the IRS and the Department

1  of Revenue from Illinois, they're still trying to get money out
2  of me that the Trustee Barber was supposed to pay in full, and
3  Judge Perkins told him, "Make sure that you pay all those taxes
4  in full."  They did not, and I have the letters.

5          So I don't think it's wrong. I don't think I've done
6  anything wrong. I have not abused the privilege. As I stated,
7  I've been abused -- I've been left. I don't know if my
8  cemetery lots are owed on. I don't know. And on that one
9  payday loan, it was because I'm not a lawyer and I do not
10 understand about un-matured interest. I don't understand those
11 things. I have tried to get lawyers, but they feel that the
12 money is already gone, and that any money that I put in there,
13 out of this professional courtesy, of -- and the bar, they
14 feel, "Well, it's already ear-marked for other people."
15 They're ahead of me.

16         I believe that there was discrimination in the '98
17 case.   I have filed a lawsuit in Federal District Court.  I'm
18 still under the appeal period regarding some of these issues.
19 The Supreme Court of Illinois -- I will mail it today,
20 Certified Return Receipt -- is going to have to appoint a Judge
21 outside of the 14th Judicial Circuit to hear these cases.

22         Mr.  -- and all of the grapevine and people getting
23 favoritism, at least from the Court, they -- Mr. Blade knew
24 months ago that this case was going to be dismissed. I've had
25 lawyers tell me because they all talk about it.

 1        Mr. Blade violated the stay. He went in, and it cost
 2 me another $80 to enter an appearance on the **Olson** case. He
 3 has no respect for your court because he knows it's in the
 4 bank, and I think that's unfair, unjust, and not right. I
 5 think there are violations to the law, and I am battered.
 6 There's no doubt about it.

 7        So I wanted to respond to Mr. Bowers's remarks.
 8 Also, I have always been a cooperative person, but I am getting
 9 tired of having to work for Trustees and never getting paid and
10 being defrauded. I came to this house -- I went to a realtor
11 so that I would not have to move again. It was a dump, and I
12 worked hard. There wasn't even a water meter in it. So that I
13 wouldn't have to move again.

14        I was ordered out of my home of fourteen years in the
15 Bankruptcy Court in '98, and I had already been diagnosed with
16 Heart disease. There was $55,000 equity remaining. I go to
17 one of my rental properties, the house that my son died in, and
18 I get strong-armed to sign modifications of mortgages. That's
19 forbidden.

20        And then I get harassed because I wouldn't sign a
21 document that I have never even been presented, and I was
22 forced to abandon that. I've had to sleep in my car. I've had
23 to sleep on the floor, and this should never have happened
24 because I was never bankrupt, nor was Mr. Ericson. Mr. Ericson
25 was a very sick man.

1          THE COURT:   Okay.  Mr. Blade.

2          MR. BLADE:   Well, Your Honor, most of the comments
3  made by Ms. Ericson are kind of a litany of life's travails,
4  but they're not directly pertinent to the issues at hand.

5          She has filed more than once for bankruptcy
6  protection.  I think the fact that she acknowledges that she
7  has filed under the six-year period is sufficient indication
8  that we're entitled to a dismissal of the current action.

9          With regard to the 341 hearing, she has never
10  addressed the fact that she elected only to answer as to her
11  name, and declined to answer to every other question, with the
12  standard response that she was pleading the 5th amendment.  I
13  don't think when you're dealing with a federal privilege such
14  as bankruptcy that you can come into Court and expect the
15  protections offered when you're not willing to cooperate with
16  the requirements of the system in terms of providing some
17  minimum basic information beyond your name.

18          So I think we're entitled to a dismissal of her
19  petition on that regard.  Whatever the circumstances that she's
20  encountered in her life, and I'm not saying those are good
21  circumstances, but in terms of the legal relevance, I don't
22  think they carry much weight right now.

23          She has made a couple of allegations against me, and
24  I don't think they're well-founded either.  The -- Judge
25  Perkins entered an order granting partial relief from stay

1  solely for the purpose of the state court entering an order
2  after hearing evidence as to whether she is, in fact, a
3  contract purchaser or a tenant.  Only then, once that's
4  determined, we take that order back to the federal court, in
5  this case for you to decide how to proceed.  So going back to
6  the state court on that seemed to be in compliance with federal
7  Bankruptcy Court orders and not a violation of the stay.  She
8  just wants the stay to be a generic stay, and no relief
9  granted, unlimited or partial.

10       So I think we've acted appropriately, and I don't
11  think that she's entitled to maintain her current bankruptcy
12  action, first, because it's a multiple filing, and second,
13  because she doesn't cooperate within the system at all, let
14  alone disregarding issues such as payment patterns that Mr.
15  Bowers has raised.

16            THE COURT:   Okay.

17            MS. ERICSON:   May I respond?

18            THE COURT:   Go ahead.

19            MS. ERICSON:   If that were the case about multiple
20  filings, any bankruptcy lawyer that did a 7 and brought his
21  client back in on a 13, then they would not have the right to
22  do that either.  I have a long history of cooperating, and I'm
23  well known in the community for good character and hard work.
24  I don't have to lie.  I have all kinds of people that will back
25  up my character.

1          As far as Mr. Blade saying I haven't cooperated, I
2  have.  Wait a minute.  There's another issue.  There are
3  probably three or four other people in this same property that
4  have entered the Bankruptcy Court because of real estate scams.
5  Also Michael Graham, but Blade wouldn't go after him, because
6  he was handling adoptions.  He gets paid by the state, and
7  Graham had foster children.  He was here ten years.  He paid
8  the taxes.  I've talked to him.  He's willing to come forward.
9  He could never get his documents he was promised either.  He
10  lost a lot of money and had to move his family.

11          There is also Judith Dee (phonetic) who just, about
12  two years ago, was also told she was sold this house.  She had
13  to file bankruptcy.  She didn't get anything in writing.  And
14  there's Wayne Nelson.  Same situation in the courts.

15          I'm involved in real estate scam in this property,
16  and as far as Mr. Blade goes, I know about Mr. Blade's
17  character, because even yesterday I found another order of --
18  or power of attorney that he drew up, he knew about Bob's
19  illness and he drew up powers of attorney for Bob and I because
20  of Bob's illness in 1994.  He did in 1995.  He did divorce work
21  for me in 1995, and he was a creditor, and he tripled his fees;
22  and I'd like this to be -- this is the truth, and I'll put
23  myself under oath before I say it because I was there and it
24  happened, and I think that Blade has played on vulnerable
25  people because when he drew up that power of attorney the

1 second time, then he brought Mr. Ericson in and he tried to
2 explain it to him, and then I was pulled aside after that, and
3 I was told that we added a supplement and we didn't tell him,
4 and you go ahead and sell everything that you want.

5 The point is, I was trying -- I loved my husband.  He
6 knew he was ill.  We just didn't know what was wrong with him,
7 and I was trying to protect my family.  But when you want to
8 get down to character, that is the truth, what I have just told
9 you.

10 And also, I have a motion to disqualify Attorney
11 Blade for conflicts of interest, and that is pending.

12 THE COURT:  Okay.  Anything further?

13 MR. BOWERS:  Your Honor, may I add a few words to
14 this --

15 THE COURT:  Go ahead.

16 MR. BOWERS:  -- Bowers.  (unclear) the matter that
17 Mr. Blade brought up about untruths, I'm looking at an
18 affidavit that Ms. Ericson filed with the Court in which she
19 states several things that I had said, which I -- I state to
20 this Court that they are very much untrue.

21 Another thing --

22 MS. ERICSON:  And let's take lie detector tests
23 because I'm telling the truth.

24 MR. BOWERS:  -- as far as lawyers were concerned,
25 Your Honor, I imagine Martha Easterwells, James Weary, and

1   Sharon Pulsifer (phonetics)  and Phillip Koenig -- there were
2   four lawyers that I know of who represented her and who had
3   since -- they requested they be taken off the case.
4           Over the years I have done a lot to assist Ms.
5   Ericson and try to assist her in a way that would be helpful to
6   her, and all through the six years of my contact with Ms.
7   Ericson not once did I receive as much as one penny for my
8   services.  It doesn't bother me.  I tried to help her.
9           MS. ERICSON:   That's not true.
10          MR. BOWERS:   And I don't know where she's getting
11  all this stuff that she's indicated in this affidavit.
12          THE COURT:   Okay.
13          MR. BOWERS:   That's all I have to say.
14          MS. ERICSON:   Your Honor, may I respond, please?
15          THE COURT:   Go ahead.  Quickly.
16          MS. ERICSON:   Mr. Bowers has just stated his motive
17  for his reprisal.  He didn't get any money because he caused it
18  himself; and truthfully, Mr. Magill is walking in the shadows.
19  I don't think that Richard Bowers is a horrible person, but I
20  think the Trustee system is broken.  I swear to God, I swear
21  under oath this very moment that everything I wrote was true.
22          THE COURT:   (unclear)
23          MS. ERICSON:   Phillip Koenig sexually harassed me.
24  He did that, and he admitted it.  I need to finish.
25          THE COURT:   (unclear) I've been letting both sides

 1 | go a little bit.

 2 |         MS. ERICSON:   Mr. Wells --

 3 |         THE COURT:   Hold it just a second.  I don't think
 4 | this is relevant to this hearing.  We have two motions to
 5 | dismiss.

 6 |         MS. ERICSON:   Well, I think (unclear)

 7 |         THE COURT:   Do you have anything else you wanted to
 8 | say?

 9 |         MS. ERICSON:   I'll finalize.  I don't think I have
10 | abused anything.

11 |         THE COURT:   Okay.

12 |         MS. ERICSON:   I know I haven't.  I know I've told
13 | the truth.  I have attended probably in these issues in the
14 | eight and a half years four to 500 hearings.  I worked my head
15 | off for Richard Barber for over one whole year.  I haven't been
16 | able to go back to work.  78 per cent of the time that I've
17 | been in this property I've been under attack.  It's crazy.  The
18 | only -- this isn't really about R. Victor Hanks or Donna
19 | Ericson anymore.  This is about a lawyer who needs money for
20 | two girls in private college.  This is about a lawyer and it's
21 | real estate fraud.

22 |         I have asked -- I have been talking to the FBI
23 | because the real estate scam surfaced, was in the paper on
24 | January 14th in Iowa, and Mr. Hanks has been allowed -- it's
25 | very similar to the *Classic Coach* case and the handicapped

1    people, through the Bankruptcy Court he's been allowed to
2    continue his fraudulent real estate acts, and Blade knows it,
3    and Blade has done this for money for himself.  Hanks is going
4    to be 84 years old.

5              THE COURT:    Okay.

6              MS. ERICSON:    I'm going to be sixty.

7              THE COURT:    Okay.

8              MS. ERICSON:    It's ridiculous.

9              THE COURT:    Anything else?

10             MS. ERICSON:    I just want a home to live in.  And I
11   did it right, and I am not a liar, and, Mr. Bowers, I'm going
12   to ask -- well, I'm going to have to do something.  He sits in
13   the Judge's chair, and I don't think he should do that.  That's
14   a side line and has nothing to do with the dismissals, but I
15   have not lied about one thing.

16             THE COURT:    Okay.  Anything else?  Mr. Bowers?  Mr.
17   Blade?

18             MR. BOWERS:    Well, Your Honor, I've been a Trustee
19   since 1963, either as an assistant or Trustee, and every year I
20   have received excellent ratings from all people involved in the
21   bankruptcy system.  I'm just saying that and clarifying my
22   reputation.

23             THE COURT:    Okay.

24             MS. ERICSON:    One brief last response?

25             THE COURT:    Quickly.

03-83019                                                    3-24-04

```
 1           MS. ERICSON:    1963, it's before the Civil Rights
 2  Act in 1964, Mr. Bowers is a financial advisor, I have
 3  documents that I was an ideal government employee.  I am.  I
 4  had a Secret clearance.  I was well trained at John Deere, and
 5  I believe that I have acted with more character and more
 6  professionalism, except for the severe duress of eight and a
 7  half years, where it makes you physically ill.
 8           THE COURT:    Okay.  Let me get on to this request for
 9  turnover of file, by Ms. Ericson.  I'd be happy to hear what
10  you want to say on that.
11           MS. ERICSON:    Are you talking about the deposit in
12  (unclear)?
13           THE COURT:    Right.
14           MS. ERICSON:    Yeah.  That money is for either John
15  Houser or Victor Hanks.  I followed the direction of Judge
16  Perkins.  Judge Perkins even stated, we don't even know how
17  much would go into the plan or have to be paid into the plan
18  until the state court had ruled, and he was -- he's right.
19           THE COURT:    Okay.
20           MS. ERICSON:    Mr. Bowers has no right to that money.
21  It belongs to -- it should be put somewhere at arm's length.
22  Maybe deposited with the Clerk of the Court at the Rock Island
23  County Courthouse; but I am going to appeal it, because I just
24  feel it all over me, right now, that you're going to do
25  something terrible to me, so -- (laughs) -- that I'm going to
```

1  have to deal with, but the money should be protected.  You're
2  much more knowledgeable than I am, Judge Fines, but put it
3  someplace where it's protected, because --
4              THE COURT:   Okay.
5              MS. ERICSON:   -- it belongs to Houser or Hanks.
6              THE COURT:   I'm going to rule on the three motions
7  to dismiss.  I'll rule on that, too.  I will do a written
8  finding of fact and conclusion of law within the next few days.
9  I'll issue that.   Anything further by any of the parties?
10              MR. BLADE:   I have nothing further to add, Your
11  Honor.
12              MR. BOWERS:  Nothing further.
13              MS. ERICSON:   I want to say thank you, Judge Fines.
14              THE COURT:   Okay, thank you.
15              MS. ERICSON:   It was a pleasure to meet you.
16              THE COURT:   Thank you.
17              MS. ERICSON:   You're welcome.
18              THE COURT:   I'll rule shortly.
19              MR. BLADE:   Thank you very much.
20              MS. ERICSON:   Okay, thank you.  Goodbye.
21              THE COURT:   Thanks.  Mmhmm.
22  (end at Sony Index #1650)
23                    * * * * * * * * * * * *
24
25

03-83019                                                    3-24-04

1          I certify that the foregoing is a true and accurate

2   transcript from the electronically sound recorded record of the

3   proceedings.

_____  5/3/04

**GLORIA C. IRWIN**                                          **Date**
**Certified Transcriber NJ AOC200**
      **Federal CET #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ 08234-5901**
**609-927-0299  1-800-471-0299**
      **FAX 609-927-6420**
**e-mail  irwingloria@comcast.net**

**03-83019**                                              **3-24-04**

**1**

```
          UNITED STATES BANKRUPTCY COURT
                    FOR THE
          CENTRAL DISTRICT OF ILLINOIS


IN RE:  ERICSON, DONNA J.        No. 98-82365 J
                                 (Chapter 7)

-------------------------

      DEPOSITION OF DONNA J. ERICSON, taken
on April 24, 2001, at The Rock Island Federal
Courthouse, 211 - 19th Street, #226, Rock Island,
Illinois, commencing at 1:30 p.m., before Victoria
Fickel, Certified Shorthand Reporter in the states
of Iowa, Illinois and Wisconsin.


          A P P E A R A N C E S


Trustee:            RICHARD E. BARBER
                    Chapter 7 Trustee
                    Hanlon & Barber
                    Hill Arcade Building, #318
                    250 East Main Street
                    Galesburg, IL  61401



Reported by:

Victoria Fickel
Certified Shorthand Reporter
Registered Merit Reporter
```

COPY

```
              IOWA-ILLINOIS REPORTING
      Moline, IL  61266        (309) 787-8125
```

---

**2**

```
                    I N D E X


WITNESS              EXAMINED BY              PAGE

Donna Ericson        Mr. Barber................  3
```

WITNESS · EXAMINED BY · PAGE
Donna Ericson · Mr. Barber................. 3
CERTIFICATE OF SHORTHAND REPORTER.............. 21

```
CERTIFICATE OF SHORTHAND REPORTER.............. 21
```

```
              IOWA-ILLINOIS REPORTING
      Moline, IL  61266        (309) 787-8125
```

---

**3**

```
 1                    DONNA J. ERICSON,
 2    called as a witness, after having been first duly
 3    sworn, was examined and testified as follows:
 4                    DIRECT EXAMINATION
 5    BY MR. BARBER:
 6        Q.  All right.  Would you please state your
 7    name.
 8        A.  Donna Jean Ericson.
 9        Q.  And we are here today, because the Court
10    entered an order on March 28, 2000, directing that
11    you appear here today and to bring certain records
12    with you.
13            I'm going to ask you a number of
14    questions.  And I ask that you listen carefully to
15    the question that I ask, and answer the question.
16            Now, if I ask you a question, and you are
17    not sure what I've asked, and you want me to repeat
18    it or rephrase it, please say so.  I'll do so.  If
19    at some point you'd like to take a break, we will
20    do that also.  So if you feel like you want to,
21    then -- then we will do that.  But I just want you
22    to know that's available to you, if you'd like to
23    do that.
24            So does that sound fair to you?
25        A.  No comment.
                 IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309) 787-8125
```

---

**4**

```
 1        Q.  Okay.
 2        A.  So no comment.
 3        Q.  All right.  Now, did you bring any
 4    records with you today?
 5        A.  I'd like to make a statement.  I would
 6    like to have an attorney.  I'm not represented.  I
 7    do not have an attorney.  I claim immunity, Part 5,
 8    of Title 28, the Fifth Amendment and
 9    self-incrimination.
10        Q.  And, again, did you bring any records
11    with you?
12        A.  I cannot answer any questions.  I claim
13    immunity under Part 5 of Title 28, the Fifth
14    Amendment and self-incrimination.
15        Q.  All right.  You started by saying you'd
16    like to have an attorney.  Have you gone to see an
17    attorney?
18        A.  They said they wouldn't come here for a
19    million dollars.
20        Q.  Who did you go see?
21        A.  I'm not supposed to be answering
22    questions.  I claim immunity, Part 5.
23        Q.  You don't think you can answer that
24    question?
25        A.  I don't believe I should answer anything,
                 IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309) 787-8125
```

5

1 except claim immunity, Part 5 of Title 28, the
2 Fifth Amendment, self-incrimination. And then the
3 hearing will be held, and we will see what happens.
4    **Q.** Okay. And before we got started, you
5 indicated to me that you were going to to do that.
6 And I suggested to you that I was still going to
7 need to ask you a few questions to give you the
8 opportunity to answer.
9      So with your indulgence, I still want to
10 ask you a few more questions.
11    **A.** Well, I decline the opportunity to
12 answer, because I won't answer. And I'm not trying
13 to give you a hard time. Just protect my rights.
14    **Q.** In the past, you've indicated to me you
15 do have books and records. Is that true?
16    **A.** I claim immunity, Part 5 of Title 28, the
17 Fifth Amendment, self-incrimination. I would like
18 to have an attorney present. I do not have one.
19    **Q.** Do you have books and records at home?
20    **A.** I claim --
21    **Q.** And to save you the trouble of doing
22 that. I've heard your statement. And if you want
23 to say -- you know, just make reference, that's all
24 right. I don't mean to have you go through the
25 same liturgy the whole time?
        IOWA-ILLINOIS REPORTING
     Moline, IL  61266    (309)787-8125

7

1    **Q.** Do you have any such documents?
2    **A.** I would like to have an attorney present.
3 I do not have one. I claim immunity, Part 5 of
4 Title 28, the Fifth Amendment and
5 self-incrimination.
6    **Q.** Did you bring any tax records with you?
7    **A.** I would like to have an attorney present,
8 but I do not have one. I claim immunity under Part
9 5 of Title 28, the Fifth Amendment,
10 self-incrimination.
11    **Q.** Did you file a tax return the past three
12 years?
13    **A.** I would like to have an attorney present.
14 I do not have one. I claim immunity, Part 5 of
15 Title 28, the Fifth Amendment and
16 self-incrimination.
17    **Q.** Did you bring any tax return that you
18 have filed in the past three years?
19    **A.** I claim immunity. I would like to have
20 an attorney present. I do not have one. I claim
21 immunity, Part 5 of Title 28, the Fifth Amendment
22 and self-incrimination.
23    **Q.** Did you bring any documents with you
24 which disprove or tend to disprove the allegations
25 which I had alleged in the Complaint objecting to
        IOWA-ILLINOIS REPORTING
     Moline, IL  61266    (309)787-8125

6

1    **A.** I claim immunity, Part 5 of Title 28, the
2 Fifth Amendment, self-incrimination. I would like
3 to have an attorney present, but I do not have one.
4    **Q.** And, again, with regard to an attorney,
5 you've talked to an attorney or more than one
6 attorney, but they do not want to represent you; is
7 that correct?
8    **A.** I claim immunity, Part 5 of Title 28, the
9 Fifth Amendment and self-incrimination.
10    **Q.** The Order that was entered by the Judge
11 asked you to bring certain records. Did you bring
12 any records concerning any property which you may
13 have sold or given away since June 24th, 1997?
14    **A.** I would like to have an attorney present.
15 I do not have one. I claim immunity, Part 5 of
16 Title 28, the Fifth Amendment and
17 self-incrimination.
18    **Q.** Did you bring any documents you have
19 relating to money that Tamera Kendall (phonetic
20 spelling) received from the sale of the Wisconsin
21 property?
22    **A.** I would like to have an attorney present.
23 I do not have one. I claim immunity, Part 5 of
24 Title 28, the Fifth Amendment and
25 self-incrimination.
        IOWA-ILLINOIS REPORTING
     Moline, IL  61266    (309)787-8125

8

1 your discharge?
2    **A.** I would like to have an attorney. I do
3 not have one. I claim immunity, Part 5 of Title
4 28, the Fifth Amendment, self-incrimination.
5    **Q.** Where are your -- where is your personal
6 property located at?
7    **A.** I would like to have an attorney present.
8 I do not have one. I claim immunity, Part 5 of
9 Title 28, the Fifth Amendment and
10 self-incrimination.
11    **Q.** I have a glass of water. I only have a
12 few more questions. Would you like a glass of
13 water?
14    **A.** No. Thank you.
15    **Q.** Are all of the items of personal property
16 which you own at your home?
17    **A.** I would like to have an attorney present.
18 I do not have one. I claim immunity, Part 5 of
19 Title 28, the Fifth Amendment and
20 self-incrimination.
21    **Q.** Do you have any property in storage?
22    **A.** I would like an attorney present. I do
23 not have one. I claim immunity, Part 5 of Title
24 28, the Fifth Amendment and self-incrimination.
25    **Q.** Have you given any personal property to
        IOWA-ILLINOIS REPORTING
     Moline, IL  61266    (309)787-8125

9

```
 1  someone to hold for you?
 2       A.  I would like an attorney present, but I
 3  do not have one.  I claim immunity, Part 5 of Title
 4  28, the Fifth Amendment, self-incrimination.
 5       Q.  Did Tamera Kendall loan you money?
 6       A.  I would like an attorney present.  I do
 7  not have one.  I claim immunity, Part 5 of Title
 8  28, the Fifth Amendment and self-incrimination.
 9       Q.  At one point, did she loan you some
10  $25,000?
11       A.  I would like an attorney present.  I do
12  not have one.  I claim immunity, Part 5 of Title
13  28, the Fifth Amendment, self-incrimination.
14       Q.  Are your bankruptcy schedules correct?
15       A.  I would like an attorney present.  I do
16  not have one.  I claim immunity, Part 5 of Title
17  28, the Fifth Amendment and self-incrimination.
18       Q.  Have you called me and told me that in
19  some instances your bankruptcy schedules are not
20  correct?
21       A.  I would like an attorney present.  I do
22  not have one.  I claim immunity, Part 5 of Title
23  28, the Fifth Amendment, self-incrimination.
24       Q.  Have you talked to an attorney about your
25  claim of immunity, or the Fifth Amendment, or
                IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309)787-8125
```

11

```
 1  Title 28, the Fifth Amendment and
 2  self-incrimination.
 3       Q.  Have you ever had those records?
 4       A.  I would like an attorney present.  I do
 5  not have one.  I claim immunity, Part 5 of Title
 6  28, the Fifth Amendment and self-incrimination.
 7       Q.  Do you want to explain why you are taking
 8  the Fifth Amendment, or claim an immunity, or say
 9  that your statements will be self-incriminating?
10       A.  I would like to have an attorney present.
11  I do not have one.  I claim immunity, Part 5 of
12  Title 28, the Fifth Amendment and
13  self-incrimination.
14       Q.  Since June 24, 1998, have you ever
15  received a tax refund from the Federal Government?
16       A.  I would like an attorney present.  I do
17  not have one.  I claim immunity, Part 5 of Title
18  28, the Fifth Amendment and self-incrimination.
19       Q.  Have you ever received proceeds from a
20  tax refund since June 24, 1998?
21       A.  I would like an attorney present.  I do
22  not have one.  I claim immunity, Part 5 of Title
23  28, the Fifth Amendment, self-incrimination.
24       Q.  You told me one time that you had gone to
25  the IRS station, and with their assistance,
                IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309)787-8125
```

10

```
 1  self-incrimination?
 2       A.  I would like to have an attorney present,
 3  but I do not have one.  I claim immunity, Part 5 of
 4  Title 28, the Fifth Amendment and
 5  self-incrimination.
 6       Q.  Since you have filed the bankruptcy on
 7  June 24, 1998, have you transferred any property in
 8  any manner to any other person?
 9       A.  I would like an attorney present.  I do
10  not have one.  I claim immunity, Part 5 of Title
11  28, the Fifth Amendment and self-incrimination.
12       Q.  With regard to the records that were
13  requested in Exhibit A, do you have those records
14  in your possession?
15       A.  I would like an attorney present.  I do
16  not have one.  I claim immunity, Part 5 of Title
17  28, the Fifth Amendment and self-incrimination.
18       Q.  Have you ever had those records in your
19  possession?  Would you like a drink of water?
20       A.  Water won't help that.  Thank you.
21       Q.  Would you like to take a break?
22       A.  I just wonder how long you are going to
23  ask me this same thing.
24           I would like an attorney present.  I do
25  not have one.  I claim immunity under Part 5 of
                IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309)787-8125
```

12

```
 1  prepared a tax return.  Is that true?
 2       A.  I would like an attorney present.  I do
 3  not have one.  I claim immunity under Part 5 of
 4  Title 28, the Fifth Amendment, self-incrimination,
 5  self-defense.
 6       Q.  Do you have a copy of that tax return?
 7       A.  I would like an attorney present.  I do
 8  not have one.  I claim immunity, Part 5 of Title
 9  28, the Fifth Amendment, self-incrimination.
10       Q.  When you signed a mortgage note in favor
11  of Tamera Kendall on March 20, 1997, did she give
12  you money at that time?
13       A.  I would like an attorney present.  I do
14  not have one.  I claim immunity, Part 5 of Title
15  28, the Fifth Amendment, self-incrimination.
16       Q.  You have listed several affirmative
17  defenses in response to the Complaint to not
18  discharge.  Did you bring any documents with you
19  which tend to prove or disprove your affirmative
20  defenses?
21       A.  I would like an attorney present.  I do
22  not have one.  I claim immunity, Part 5 of Title
23  28, the Fifth Amendment, self-incrimination.
24       Q.  Is it your position that you are going to
25  take -- or is it your position that you are going
                IOWA-ILLINOIS REPORTING
          Moline, IL  61266        (309)787-8125
```

13

```
1   to refuse to answer any question that I ask you
2   because of immunity, the Fifth Amendment, or the
3   fact that it may be self-incriminating?
4        A.  (Indicating.)
5            MR. BARBER:  Would you please read
6   back the question.
7            (Requested portion read.)
8   BY MR. BARBER:
9        A.  I would like an attorney present.  I do
10  not have one.  I claim immunity under Part 5 of
11  Title 28, the Fifth Amendment and
12  self-incrimination.
13       Q.  Are you claiming blanket immunity?
14       A.  I am claiming immunity, Part 5 of Title
15  28, the Fifth Amendment and self-incrimination.
16       Q.  Do you hold property for anyone else?
17       A.  I would like to have an attorney present.
18  I do not have one.  I claim immunity, Part 5 of
19  Title 28, the Fifth Amendment, self-incrimination.
20       Q.  Are all of your records at home?
21       A.  I would like an attorney present.  I do
22  not have one.  I claim immunity under Part 5 of
23  Title 28, the Fifth Amendment, self-incrimination.
24       Q.  Do you have any records in storage?
25       A.  I would like to have an attorney present.
              IOWA-ILLINOIS REPORTING
         Moline, IL  61266          (309)787-8125
```

15

```
1   property was destroyed, some was sold through
2   Wisconsin Real Estate, and some was given away?
3        A.  I would like to have an attorney present.
4   I do not have one.  I claim immunity, Part 5 of
5   Title 28, the Fifth Amendment and
6   self-incrimination.
7        Q.  At that same hearing, you indicated that
8   you only have a couple of collectibles remaining,
9   and that others were sold prior to converting
10  Chapter 7, but that you had records concerning
11  those items -- the sale of those items.  Is that
12  true?
13       A.  I would like an attorney present.  I do
14  not have one.  I claim immunity under Part 5 of
15  Title 28, the Fifth Amendment and
16  self-incrimination.
17       Q.  At that Meeting of Creditors, did you
18  tell me that you had records at home?
19       A.  I would like to have an attorney present.
20  I do not have one.  I claim immunity under Part 5
21  of Title 28, the Fifth Amendment and
22  self-incrimination.
23       Q.  All right.  The deposition started at
24  1:30.  It is now 1:50.  And I've asked you a series
25  of questions.
              IOWA-ILLINOIS REPORTING
         Moline, IL  61266          (309)787-8125
```

14

```
1   I do not have one.  I claim immunity, Part 5 of
2   Title 28, the Fifth Amendment and
3   self-incrimination.
4        Q.  I understand that you didn't bring any
5   records with you in response to this Order.  But do
6   those -- do any such documents exist that are
7   requested under this Order?
8        A.  I would like an attorney present.  I do
9   not have one.  I claim immunity under Part 5 of
10  Title 28, the Fifth Amendment and
11  self-incrimination.
12       Q.  Since you filed bankruptcy on June 24,
13  '98, have they ever existed?
14       A.  I would like an attorney present.  I do
15  not have one.  I claim immunity, Part 5 of Title
16  28, the Fifth Amendment and self-incrimination.
17       Q.  At your Meeting of Creditors on January
18  18th, 2000, did you say that you didn't know if
19  your bankruptcy schedules were accurate in many
20  regards?
21       A.  I would like an attorney present.  I do
22  not have one.  I claim immunity, Part 5 of Title
23  28, the Fifth Amendment and self-incrimination.
24       Q.  At that January 18th, 2000 Meeting of
25  Creditors, did you say that some of your personal
              IOWA-ILLINOIS REPORTING
         Moline, IL  61266          (309)787-8125
```

16

```
1            Did you have anything that you wanted to
2   produce at this time?
3        A.  I would like to have an attorney present.
4   I do not have one.  I claim immunity, Part 5 of
5   Title 28, the Fifth Amendment, self-incrimination.
6        Q.  Taking a moment to reflect on the
7   questions that I've asked you.  Do you want to
8   answer any of those questions now?
9        A.  I would like an attorney present.  I do
10  not have one.  I claim immunity, Part 5 of Title
11  28, the Fifth Amendment and self-incrimination.
12       Q.  Would you like to have the court reporter
13  read back any of those questions, so that you can
14  think about answering those questions?
15       A.  I would like an attorney present.  I do
16  not have one.  I claim immunity, Part 5 of Title
17  28, the Fifth Amendment and self-incrimination.
18       Q.  Do you want to call an attorney now to
19  see if you could get some advice on whether or not
20  you should answer any of those questions now?
21       A.  I would like to have an attorney present.
22  I do not have one.  I claim immunity, Part 5 of
23  Title 28, the Fifth Amendment and
24  self-incrimination.
25       Q.  What efforts have you made to contact an
              IOWA-ILLINOIS REPORTING
         Moline, IL  61266          (309)787-8125
```

17

1  attorney?
2      **A.** I would like to have an attorney present,
3  but I do not have one. I claim immunity, Part 5 of
4  Title 28, the Fifth Amendment and
5  self-incrimination.
6      **Q.** Have you contacted more than one?
7      **A.** I would like to have an attorney present.
8  I do not have one. I claim immunity, Part 5 of
9  Title 28, the Fifth Amendment and
10 self-incrimination.
11     **Q.** All right. Well, again, it's -- it
12 appears to me to be 1:50 p.m. So I've asked you
13 all the questions. I've given you an opportunity
14 to consider it and answer those.
15         And I take it your answer is no. Is that
16 correct?
17     **A.** I would now like to make one last
18 statement before you conclude.
19         I am a government informant of bankruptcy
20 fraud. I am involved in entrapment by Richard
21 Barber, Richard Bowers, James McGill. I'm aware of
22 the seriousness of what is going on. Thank you.
23     **Q.** What's the nature of the bankruptcy
24 fraud?
25     **A.** I have no other statement.
                IOWA-ILLINOIS REPORTING
        Moline, IL 61266        (309)787-8125

18

1      **Q.** What's the nature of the entrapment?
2      **A.** I would like to have an attorney present,
3  but I do not have one. I claim immunity, Part 5 of
4  Title 28, the Fifth Amendment, self-incrimination.
5      **Q.** Do you have any facts to support your
6  statement concerning bankruptcy fraud?
7      **A.** I would like to have an attorney present.
8  I do not have one. I claim immunity, Part 5 of
9  Title 28, the Fifth Amendment, self-incrimination.
10     **Q.** Do you have any facts to support your
11 claim of entrapment?
12     **A.** I would like to have an attorney present,
13 but I do not have one. I claim immunity under Part
14 5 of Title 28, the Fifth Amendment,
15 self-incrimination.
16     **Q.** Do you have any documents which would
17 support your claim that there has been some
18 bankruptcy fraud or entrapment?
19     **A.** I would like to have an attorney present.
20 I do not have one. I claim immunity, Part 5 of
21 Title 28, the Fifth Amendment, self-incrimination.
22     **Q.** What does bankruptcy fraud mean to you?
23     **A.** I would like to have an attorney present.
24 I do not have one. I claim immunity, Part 5 of
25 Title 28, the Fifth Amendment and
                IOWA-ILLINOIS REPORTING
        Moline, IL 61266        (309)787-8125

19

1  self-incrimination.
2      **Q.** All right. Did you have anything else
3  you wanted to say?
4      **A.** One last thing. I have the right to
5  setoff. It's a defense.
6      **Q.** What does that mean?
7      **A.** I prefer not to say any more.
8      **Q.** What type of right of setoff do you think
9  you have?
10     **A.** I would like to have an attorney present.
11 I do not have one. I claim immunity, Part 5 of
12 Title 28, the Fifth Amendment, self-incrimination.
13     **Q.** What's the nature of the setoff?
14     **A.** I would like to have an attorney present.
15 I do not have one. I claim immunity, Part 5 of
16 Title 28, the Fifth Amendment and
17 self-incrimination.
18     **Q.** Do you have any documents which support
19 your claim to a right of setoff?
20     **A.** I would like to have an attorney present.
21 I do not have one. I claim immunity, Part 5 of
22 Title 28, the Fifth Amendment, self-incrimination.
23     **Q.** Have you talked to an attorney about your
24 right of setoff?
25     **A.** I would like to have an attorney present.
                IOWA-ILLINOIS REPORTING
        Moline, IL 61266        (309)787-8125

20

1  I do not have one. I claim immunity, Part 5 of
2  Title 28, the Fifth Amendment and
3  self-incrimination.
4      **Q.** Is there anything else that you want to
5  say before we conclude the deposition?
6      **A.** No thank you.
7          MR. BARBER:  That concludes the
8  deposition. Thank you.
9              (Deposition concluded at 1:54 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                IOWA-ILLINOIS REPORTING
        Moline, IL 61266        (309)787-8125

```
                                                      21
 1   STATE OF ILLINOIS )
                       ) ss
 2   ROCK ISLAND COUNTY)

 3            I, Victoria Fickel, a Certified Shorthand
     Reporter, in and for the States of Illinois, Iowa
 4   and Wisconsin, do hereby certify:

 5
              That the witness in the foregoing
 6   deposition named was present at the time and place
     herein specified;
 7

 8            That the said proceeding was taken before
     me as a Certified Shorthand Reporter at the said
 9   time and place and was taken down in shorthand
     writing by me;
10

11            That I am a Certified Shorthand Reporter
     of the State of Illinois, Iowa and Wisconsin, that
12   the said proceeding was thereafter under my
     direction transcribed into computer-assisted
13   transcription, after having reviewed the audio
     recording of same, and that the foregoing
14   transcript constitutes a full, true and correct
     report of the proceedings which then and there took
15   place;

16
              That I am a disinterested person to the
17   said action.

18
              IN WITNESS WHEREOF, I have hereto
19   subscribed my hand this 25th day of April, 2001.

20

21

22            Victoria Fickel, CSR, RPR, RMR
              (Certified Shorthand, Registered
23            Professional and Registered Merit
              Reporter)
24            IL CSR No. 84-003220
              IA CSR No. 882
25
                IOWA-ILLINOIS REPORTING
        Moline, IL   61266          (309) 787-8125
```

**A**

about 9:24 16:14 19:23
accurate 14:19
action 21:17
advice 16:19
affirmative 12:16,19
after 3:2 21:13
again 4:10 6:4 17:11
allegations 7:24
alleged 7:25
Amendment 4:8,14 5:2
  5:17 6:2,9,16,24 7:4,9
  7:15,21 8:4,9,19,24
  9:4,8,13,17,23,25
  10:4,11,17 11:1,6,8
  11:12,18,23 12:4,9,15
  12:23 13:2,11,15,19
  13:23 14:2,10,16,23
  15:5,15,21 16:5,11,17
  16:23 17:4,9 18:4,9
  18:14,21,25 19:12,16
  19:22 20:2
answer 3:15 4:12,23,25
  5:8,12,12 13:1 16:8
  16:20 17:14,15
answering 4:21 16:14
anyone 13:16
anything 4:25 16:1
  19:2 20:4
appear 3:11
appears 17:12
April 1:7 21:19
Arcade 1:14
asked 3:17 6:11 15:24
  16:7 17:12
assistance 11:25
attorney 4:6,7,16,17
  5:18 6:3,4,5,6,14,22
  7:2,7,13,20 8:2,7,17
  8:22 9:2,6,11,15,21
  9:24 10:2,9,15,24
  11:4,10,16,21 12:2,7
  12:13,21 13:9,17,21
  13:25 14:8,14,21 15:3
  15:13,19 16:3,9,15,18
  16:21 17:1,2,7 18:2,7
  18:12,19,23 19:10,14
  19:20,23,25
audio 21:13
available 3:22
aware 17:21
away 6:13 15:2

**B**

back 13:6 16:13
bankruptcy 1:1 9:14,19
  10:6 14:12,19 17:19
  17:23 18:6,18,22
barber 1:12,13 2:4 3:5
  13:5,8 17:21 20:7
before 1:8 5:4 17:18
  20:5 21:8
believe 4:25
blanket 13:13

books 5:15,19
Bowers 17:21
break 3:19 10:21
bring 3:11 4:3,10 6:11
  6:11,18 7:6,17,23
  12:18 14:4
Building 1:14

**C**

C 1:11
call 16:18
called 3:2 9:18
carefully 3:14
CENTRAL 1:2
certain 3:11 6:11
CERTIFICATE 2:14
Certified 1:9,19 21:3,8
  21:11,22
certify 21:4
Chapter 1:5,13 15:10
  5:20 6:1,8,15,23 7:3,8
  7:14,19,20 8:3,8,18
  8:23 9:3,7,12,16,22
  9:25 10:3,10,16,25
  11:5,8,11,17,22 12:3
  12:8,14,22 13:10,18
  13:22 14:1,9,15,22
  15:4,14,20 16:4,10,16
  16:22 17:3,8 18:3,8
  18:11,13,17,20,24
  19:11,15,19,21 20:1
claiming 13:13,14
collectibles 15:8
come 4:18
commencing 1:8
comment 3:25 4:2
Complaint 7:25 12:17
computer-assisted
  21:12
concerning 6:12 15:10
  18:6
conclude 17:18 20:5
concluded 20:9
concludes 20:7
consider 17:14
constitutes 21:14
contact 16:25
contacted 17:6
converting 15:9
copy 12:6
correct 6:7 9:14,20
  17:16 21:14
COUNTY 21:2
couple 15:8
court 1:1 3:9 16:12
Courthouse 1:8
Creditors 14:17,25
  15:17
CSR 21:22,24,24

**D**

D 2:1
day 21:19

decline 5:11
defense 19:5
defenses 12:17,20
deposition 1:7 15:23
  20:5,8,9 21:6
destroyed 15:1
DIRECT 3:4
directing 3:10
direction 21:12
discharge 8:1 12:18
disinterested 21:16
disprove 7:24,24 12:19
DISTRICT 1:2
documents 6:18 7:1,23
  12:18 14:6 18:16
  19:18
doing 5:21
dollars 4:19
donna 1:4,7 2:4 3:1,8
down 21:9
drink 10:19
duly 3:2

**E**

E 1:11,11,12 2:1
East 1:14
efforts 16:25
entered 3:10 6:10
entrapment 17:20 18:1
  18:11,18
ericson 1:4,7 2:4 3:1,8
Estate 15:2
ever 10:18 11:3,14,19
  14:13
EXAMINATION 3:4
examined 2:3 3:3
except 5:1
Exhibit 10:13
exist 14:6
existed 14:13
explain 11:7

**F**

fact 13:3
facts 18:5,10
fair 3:24
favor 12:10
Federal 1:7 11:15
feel 3:20
few 5:7,10 8:12
Fickel 1:9,18 21:3,22
  6:9,16,24 7:4,9,15,21
  8:4,9,19,24 9:4,8,13
  9:17,23,25 10:4,11,17
  11:1,6,8,12,18,23
  12:4,9,15,23 13:2,11
  13:15,19,23 14:2,10
  14:16,23 15:5,15,21
  16:5,11,17,23 17:4,9
  18:4,9,14,21,25 19:12
  19:16,22 20:2
file 7:11
filed 7:18 10:6 14:12

first 3:2
follows 3:3
foregoing 21:5,13
fraud 17:20,24 18:6,18
  18:22
from 6:20 11:15,19
full 21:14

**G**

Galesburg 1:15
give 5:7,13 12:11
given 6:13 8:25 15:2
  17:13
glass 8:11,12
go 4:20 5:24
going 3:13 5:5,6 10:22
  12:24,25 17:22
gone 4:16 11:24
government 11:15
  17:19

**H**

hand 21:19
Hanlon 1:13
happens 5:3
hard 5:13
having 3:2 21:13
heard 5:22
hearing 5:3 15:7
held 5:3
help 10:20
hereto 21:18
Hill 1:14
hold 9:1 13:16
home 5:19 8:16 13:20
  15:18

**I**

IA 21:24
IL 1:15 21:24
illinois 1:2,8,9 21:1,3
  21:11
immunity 4:7,13,22 5:1
  5:16 6:1,8,15,23 7:3,8
  7:14,19,21 8:3,8,18
  8:23 9:3,7,12,16,22
  9:25 10:3,10,16,25
  11:5,8,11,17,22 12:3
  12:8,14,22 13:2,10,13
  13:14,18,22 14:1,9,15
  14:22 15:4,14,20 16:4
  16:10,16,22 17:3,8
  18:3,8,13,20,24 19:11
  19:15,21 20:1
indicated 5:5,14 15:7
Indicating 13:4
indulgence 5:9
informant 17:19
instances 9:19
involved 17:20
Iowa 1:9 21:3,11
IRS 11:25
island 1:7,8 21:2
items 8:15 15:11,11

**J**

J 1:4,4,7 3:1
James 17:21
January 14:17,24
Jean 3:8
Judge 6:10
June 6:13 10:7 11:14
  11:20 14:12
just 3:21 5:13,23 10:22

**K**

Kendall 6:19 9:5 12:11
know 3:22 5:23 14:18

**L**

last 17:17 19:4
like 3:19,20,22 4:5,6,16
  5:17 6:2,14,22 7:2,7
  7:13,19 8:2,7,12,17
  8:22 9:2,6,11,15,21
  10:2,9,15,19,21,24
  11:4,10,16,21 12:2,7
  12:13,21 13:9,17,21
  13:25 14:8,14,21 15:3
  15:13,19 16:3,9,12,15
  16:21 17:2,7,17 18:2
  18:7,12,19,23 19:10
  19:14,20,25
listed 12:16
listen 3:14
liturgy 5:25
loan 9:5,9
located 8:6
long 10:22

**M**

made 16:25
Main 1:14
make 4:5 5:23 17:17
manner 10:8
many 14:19
March 3:10 12:11
may 6:12 13:3
McGill 17:21
mean 5:24 18:22 19:6
Meeting 14:17,24
  15:17
Merit 1:19 21:23
million 4:19
moment 16:6
money 6:19 9:5 12:12
more 5:10 6:5 8:12
  17:6 19:7
mortgage 12:10

**N**

N 1:11 2:1
name 3:7
named 21:6
nature 17:23 18:1
  19:13
need 5:7
note 12:10
number 3:13

## O

objecting 7:25
Okay 4:1 5:4
one 5:18 6:3,5,15,23
7:3,8,14,20 8:3,8,18
8:23 9:3,7,9,12,16,22
10:3,10,16,25 11:5,11
11:17,22,24 12:3,8,14
12:22 13:10,18,22
14:1,9,15,22 15:4,14
15:20 16:4,10,16,22
17:3,6,8,17 18:3,8,13
18:20,24 19:4,11,15
19:21 20:1
only 8:11 15:8
opportunity 5:8,11
17:13
order 3:10 6:10 14:5,7
other 10:8 17:25
others 15:9
own 8:16

## P

P 1:11,11
PAGE 2:3
Part 4:7,13,22 5:1,16
6:1,8,15,23 7:3,8,14
7:21 8:3,8,18,23 9:3,7
9:12,16,22 10:3,10,16
10:25 11:5,11,17,22
12:3,8,14,22 13:10,14
13:18,22 14:1,9,15,22
15:4,14,20 16:4,10,16
16:22 17:3,8 18:3,8
18:13,20,24 19:11,15
19:21 20:1
past 5:14 7:11,18
person 10:8 21:16
personal 8:5,15,25
14:25
phonetic 6:19
place 21:6,9,15
please 3:6,18 13:5
point 3:19 9:9
portion 13:7
position 12:24,25
possession 10:14,19
prefer 19:7
prepared 12:1
present 5:18 6:3,14,22
7:2,7,13,20 8:7,17,22
9:2,6,11,15,21 10:2,9
10:15,24 11:4,10,16
11:21 12:2,7,13,21
13:9,17,21,25 14:8,14
14:21 15:3,13,19 16:3
16:9,15,21 17:2,7
18:2,7,12,19,23 19:10
19:14,20,25 21:6
prior 15:9
proceeding 21:8,12
proceedings 21:14
proceeds 11:19
produce 16:2

## Professional

Professional 21:23
property 6:12,21 8:6
8:15,21,25 10:7 13:16
15:1
protect 5:13
prove 12:19
p.m 1:8 17:12 20:9

## Q

question 3:15,15,16
4:24 13:1,6
questions 3:14 4:12,22
5:7,10 8:12 15:25
16:7,8,13,14,20 17:13

## R

R 1:11
RE 1:4
read 13:5,7 16:13
Real 15:2
received 6:20 11:15,19
recording 21:13
records 3:11 4:4,10
5:15,19 6:11,12 7:6
10:12,13,18 11:3
13:20,24 14:5 15:10
15:18
reference 5:23
reflect 16:6
refund 11:15,20
refuse 13:1
regard 6:4 10:12
regards 14:20
Registered 1:19 21:22
21:23
relating 6:19
remaining 15:8
repeat 3:17
rephrase 3:18
report 21:14
Reported 1:17
reporter 1:9,19,19 2:14
16:12 21:3,8,11,23
represent 6:6
represented 4:6
requested 10:13 13:7
14:7
response 12:17 14:5
return 7:11,17 12:1,6
reviewed 21:13
richard 1:12 17:20,21
right 3:6 4:3,15 5:24
15:23 17:11 19:2,4,8
19:19,24
rights 5:13
RMR 21:22
rock 1:7,8 21:2
RPR 21:22

## S

S 1:11
sale 6:20 15:11
same 5:25 10:23 15:7
21:13

## save

save 5:21
saying 4:15
schedules 9:14,19
14:19
see 4:16,20 5:3 16:19
self-defense 12:5
self-incriminating 11:9
13:3
self-incrimination 4:9
4:14 5:2,17 6:2,9,17
6:25 7:5,10,16,22 8:4
8:10,20,24 9:4,8,13
9:17,23 10:1,5,11,17
11:2,6,13,18,23 12:4
12:9,15,23 13:12,15
13:19,23 14:3,11,16
14:23 15:6,16,22 16:5
16:11,17,24 17:5,10
18:4,9,15,21 19:1,12
19:17,22 20:3
series 15:24
seriousness 17:22
setoff 19:5,8,13,19,24
several 12:16
shorthand 1:9,19 2:14
21:3,8,9,11,22
signed 12:10
since 6:13 10:6 11:14
11:20 14:12
sold 6:13 15:1,9
some 3:19 9:9,19 14:25
15:1,2 16:19 18:17
someone 9:1
sound 3:24
specified 21:6
spelling 6:20
ss 21:1
started 4:15 5:4 15:23
state 3:6 21:1,11
statement 4:5 5:22
17:18,25 18:6
statements 11:9
states 1:1,9 21:3
station 11:25
still 5:6,9
storage 8:21 13:24
Street 1:8,14
subscribed 21:19
suggested 5:6
support 18:5,10,17
19:18
supposed 4:21
sure 3:17
sworn 3:3

## T

take 3:19 10:21 12:25
17:15
taken 1:7 21:8,9
taking 11:7 16:6
talked 6:5 9:24 19:23
Tamera 6:19 9:5 12:11
tax 7:6,11,17 11:15,20
12:1,6
tell 15:18

## tend

tend 7:24 12:19
testified 3:3
thank 8:14 10:20 17:22
20:6,8
their 11:25
thing 10:23 19:4
think 4:23 16:14 19:8
three 7:11,18
through 5:24 15:1
12:12 16:2 21:6,9
Title 4:8,13 5:1,16 6:1
6:8,16,24 7:4,9,15,21
8:3,9,19,23 9:3,7,12
9:16,22 10:4,10,16
11:1,5,12,17,22 12:4
12:8,14,22 13:11,14
13:19,23 14:2,10,15
14:22 15:5,15,21 16:5
16:10,16,23 17:4,9
18:4,9,14,21,25 19:12
19:16,22 20:2
today 3:9,11 4:4
told 9:18 11:24
transcribed 21:12
transcript 21:14
transcription 21:13
transferred 10:7
trouble 5:21
true 5:15 12:1 15:12
21:14
Trustee 1:12,13
trying 5:12
type 19:8

## U

under 4:13 7:8 10:25
12:3 13:10,22 14:7,9
15:14,20 18:13 21:12
understand 14:4
UNITED 1:1

## V

Victoria 1:8,18 21:3,22

## W

want 3:17,20,21 5:9,22
6:6 11:7 16:7,18 20:4
wanted 16:1 19:3
water 8:11,13 10:19,20
Well 5:11 17:11
were 5:5 10:12 14:19
15:9
WHEREOF 21:18
whole 5:25
Wisconsin 1:9 6:20
15:2 21:4,11
witness 2:3 3:2 21:5,18
wonder 10:22
wouldn't 4:18
writing 21:9

## X

X 2:1

## Y

years 7:12,18

## S

$25,000 9:10

## #

#226 1:8
#318 1:14

## I

1:30 1:8 15:24
1:50 15:24 17:12
1:54 20:9
18th 14:18,24
19th 1:8
1997 6:13 12:11
1998 10:7 11:14,20

## 2

20 12:11
2000 3:10 14:18,24
2001 1:7 21:19
21 2:14
211 1:8
24 1:7 10:7 11:14,20
14:12
24th 6:13
25th 21:19
250 1:14
28 3:10 4:8,13 5:1,16
6:1,8,16,24 7:4,9,15
7:21 8:4,9,19,24 9:4,8
9:13,17,23 10:4,11,17
11:1,6,12,18,23 12:4
12:9,15,23 13:11,15
13:19,23 14:2,10,16
14:23 15:5,15,21 16:5
16:11,17,23 17:4,9
18:4,9,14,21,25 19:12
19:16,22 20:2

## 3

3 2:4

## 5

5 4:7,13,22 5:1,16 6:1,8
6:15,23 7:3,9,14,21
8:3,8,18,23 9:3,7,12
9:16,22 10:3,10,16,25
11:5,11,17,22 12:3,8
12:14,22 13:10,14,18
13:22 14:1,9,15,22
15:4,14,20 16:4,10,16
16:22 17:3,8 18:3,8
18:14,20,24 19:11,15
19:21 20:1

## 6

61401 1:15

## 7

7 1:5,13 15:10

Donna Ericson

| 8 | | | | |
|---|---|---|---|---|
| **84-003220** 21:24 | | | | |
| **882** 21:24 | | | | |

| 9 | | | | |
|---|---|---|---|---|
| **98** 14:13 | | | | |
| **98-82365** 1:4 | | | | |

## IN THE UNITED STATES BANKRUPTCY COURT **FILED**
## FOR THE CENTRAL DISTRICT OF ILLINOIS

SEP 0 4 2001

HARDIN W. HAWES, Clerk
U. S. BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| DONNA J. ERICSON, | ) Bankruptcy Case No. 98-82365 |
| | ) |
| Debtor. | ) |
| | ) |
| RICHARD E. BARBER, as Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary Case No. 00-8044 |
| | ) |
| DONNA J. ERICSON, | ) |
| | ) |
| Defendant. | ) |

### OPINION

This matter having come before the Court on a Motion to Require Debtor to Answer

Questions and Produce Documents filed by the Trustee on July 10, 2001, and upon a

Combined Objection to Notice and Order by Judge Gerald D. Fines Dated 31 July 2001 and

Motion for Removal to Federal District Court and Determination by the Attorney General of

the United States of America and or Supreme Court of the United States of America, and

Motion for Lack of Jurisdiction to Hear Immunity Claims in this Case, and Vacate Order of

July 31, 2001, filed by the Debtor on August 10, 2001; the Court, having heard arguments

of the parties and being otherwise fully advised in the premises, makes the following findings

AO 72A

of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Findings of Fact

1.    On June 24, 1998, Debtor, Donna J. Ericson, filed for relief under Chapter 13 of the Bankruptcy Code.

2.    On April 27, 1999, Debtor's Chapter 13 bankruptcy was converted to one under Chapter 7 for the Debtor's failure to propose a Chapter 13 Plan which could be confirmed by the Court.

3.    Following the conversion to Chapter 7 of the Bankruptcy Code, the Debtor appeared at Section 341 hearings on January 18, 2000, February 15, 2000, and February 29, 2000.

4.    At the Section 341 hearings listed above, the Debtor provided limited testimony concerning her financial affairs. However, upon further questioning, she asserted her privilege against self-incrimination under the Fifth Amendment of the United States Constitution, and refused to testify further or to produce any documents or records which she had in her possession.

5.    On March 20, 2000, the Trustee filed a Complaint to Deny Discharge, to which the Debtor filed an Answer and Counterclaim to Complaint to Deny Discharge on April 19, 2000.

6.    Following the filing of the Trustee's Complaint to Deny Discharge and the Debtor's Answer and Counterclaim to Complaint to Deny Discharge, Judge Perkins ordered

2

the Debtor to appear for an examination and produce certain documents concerning her financial matters. The examination was scheduled for April 24, 2001.

7.  On April 24, 2001, Debtor appeared for the scheduled examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure; however, she did not produce any documents at that time and asserted her privilege against self-incrimination pursuant to the Fifth Amendment as to all questions that were propounded by the Trustee at the examination.

8.  Following numerous unsuccessful attempts to elicit testimony and document production from the Debtor, the Trustee, on July 10, 2001, filed a Motion to Require Debtor to Answer Questions and Produce Documents.

9.  Following the filing of the Trustee's Motion to Require Debtor to Answer Questions and Produce Documents, this matter was assigned to this Court for the sole purpose of determining whether the Debtor had properly asserted her privilege against self-incrimination under the Fifth Amendment.

10.  On July 31, 2001, this Court issued a Notice and Order scheduling the Trustee's Motion to Require Debtor to Answer Questions and Produce Documents for August 31, 2001, at 11:00 a.m., in Rock Island, Illinois. The Notice and Order further advised the parties to submit briefs on or before August 24, 2001, concerning the issue of the Debtor's assertion of her privilege against self-incrimination under the Fifth Amendment.

11.  On August 10, 2001, Debtor filed her Motion, which, in essence, objects to the jurisdiction of this Court to hear the issues raised in the Trustee's Motion to Require Debtor to Answer Questions and Produce Documents, and which requests that the matter be

3

transferred to either the United States District Court for the Central District of Illinois or to the United States Supreme Court.

12.    The Debtor is *pro se*, and has been instructed on numerous occasions by Judge Perkins that it would be in her best interest to seek counsel in this matter. This Court also instructed Debtor to seek counsel in this matter at hearing on August 31, 2001, and does so again in this Opinion.

## Conclusions of Law

In his Motion to Require Debtor to Answer Questions and Produce Documents, Trustee, Richard E. Barber, asserts that the Debtor is not entitled to claim immunity under the Fifth Amendment as she has done in this case. The Trustee requests that the Debtor have the opportunity to present what facts, if any, she has to claim a right not to answer the questions or produce the documents requested to determine if the Debtor is entitled to exercise that right, and, if so, the extent of that right. Further, the Trustee requests that the Debtor be required to answer the questions set forth in the deposition conducted on April 24, 2001, and produce the documents set forth in Judge Perkins' Order of March 28, 2001, to the extent that the Court finds that there is no immunity as to these matters.

As stated above, this matter is before this Court for the sole purpose of determining whether the Debtor has properly asserted her privilege against self-incrimination under the Fifth Amendment and the extent of that privilege. In preparation for the hearing on August 31, 2001, this Court reviewed the recorded testimony of the Debtor at her Section 341 hearings, which were held on January 18, 2000, February 15, 2000, and February 29, 2000.

4

AO 72A
(Rev. 8/82)

Further, this Court has reviewed the transcript of Debtor's deposition which was taken before the Trustee on April 24, 2001.

The Court will first address the Combined Objection to Notice and Order by Judge Gerald D. Fines Dated 31 July 2001 and Motion filed by the Debtor on August 10, 2001. In that Motion, the Debtor requests that this case/hearing be removed to the Federal District Court for hearing, determination be made that venue and jurisdiction is improper in this Court, and the Notice and Order issued on July 31, 2001, setting this matter for hearing be vacated. Having reviewed the Debtor's Combined Objection and Motion, the Court finds that it should be denied in its entirety, as jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334. Further, this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). See: In re Connelly, 59 B.R. 421 (Bankr. N.D. Ill. 1986).

In addressing the issue of whether the Debtor has properly asserted her privilege against self-incrimination under the Fifth Amendment, the Court must first determine whether the Debtor has waived her right to assert the privilege based upon the limited testimony which she did provide at her Section 341 hearings and again at her deposition on April 24, 2001. The law is clear that a debtor may assert a Fifth Amendment privilege against self-incrimination at any stage in a criminal or civil proceeding. See: In re Blan, 239 B.R. 385 (Bankr. W.D. Ark. 1999). In order to determine whether an individual has waived the right to assert the Fifth Amendment privilege, the Court must apply a two-pronged test. In Klein v. Harris, 667 F.2d 274 (2nd Cir. 1981), the Second Circuit adopted what has come to be the most widely accepted test for determining whether an individual has waived the Fifth Amendment privilege against self-incrimination. Under that test, a waiver may be found if:

5

(1) the witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth; and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the Fifth Amendment's privilege against self-incrimination. This test is in keeping with the rule of law set out by the Supreme Court in Rogers v. U.S., 340 U.S. 367, 71 S.Ct. 438 (1951). In considering the Debtor's limited testimony at her Section 341 hearings and again at her deposition on April 24, 2001, the Court finds that, while some of the testimony made by the Debtor raises possible questions as to the truth of financial matters of the Debtor, the Court is unable to determine that there is a significant likelihood that the finder of fact will be left with or prone to rely on a distorted view of the truth, as is required in Klein v. Harris, supra. Further, the Court finds that, in this instance, given that the Debtor is *pro se*, it is unable to find that the Debtor had a reason to know that the statements which she did make at her Section 341 hearings and again at her deposition on April 24, 2001, would be interpreted as a waiver of the Fifth Amendment privilege against self-incrimination. As such, the Court finds that there has been no waiver of the privilege in this instance.

Having found that the Debtor has not waived her privilege against self-incrimination under the Fifth Amendment, the Court now must determine whether the Debtor has properly asserted that privilege. See: In re Blan, supra, at 390. The Debtor's mere statement that the requested information may tend to incriminate her is not sufficient to entitle her to invoke the Fifth Amendment. Rather, the Debtor must have a reasonable cause to apprehend danger of self-incrimination from her direct answers to specific questions and must produce for the Court credible reasons why her answers would tend to incriminate her. See: In re Connelly,

6

AO 72A

supra, at 434. In order to properly invoke the privilege, a debtor must produce for the Court credible reasons why her answers would incriminate her. In keeping with this requirement, the Court instructed the Debtor that an *in camera* hearing would be held in which only the Debtor and the Court would be present, so that the Court could hear the Debtor's basis for her assertion of the Fifth Amendment privilege and to determine if, in fact, there was reasonable cause for the Debtor to apprehend danger of self-incrimination from her answers to questions posed by the Trustee and in his request for her to produce documents and records. The Debtor was also instructed that it would be in her best interest to obtain counsel in this matter. However, she indicated that she was unable to obtain counsel, even though she had attempted to do so.

At hearing on August 31, 2001, the Court advised the Debtor that, in order for it to determine whether she had properly asserted her Fifth Amendment privilege, it would be necessary for her to explain the basis for her assertion of the privilege to the Court. In response to the Debtor's concerns that anything she said might be used against her in her bankruptcy case or in the instant adversary proceeding, the Court advised the Debtor that the hearing would be *in camera*, that only the Court and the Debtor would be present, and that both the Trustee and the U. S. Trustee would be instructed to leave the Courtroom during the Debtor's explanation of her assertion of the Fifth Amendment privilege. The Debtor also expressed concerns that the recording of the hearing could be accessed by parties other than the Court and herself. The Court advised the Debtor that the tape recording of the proceeding would be kept in chambers in Danville, Illinois, and would not be available for review by anyone other than the Court and the Debtor.

7

Having been assured that her rights would be properly protected, the Debtor indicated that she was willing to explain to the Court her basis for the assertion of privilege against self-incrimination under the Fifth Amendment. At that point in time, the Trustee and the U. S. Trustee were instructed to leave the Courtroom. Following their exit, the Debtor offered an explanation of her assertion of her Fifth Amendment privilege, and responded to questions from the Court in that regard.

Having reviewed the explanation offered by the Debtor as to her assertion of the privilege against self-incrimination under the Fifth Amendment and the responses of the Debtor to the questions propounded by the Court, the Court concludes that the Debtor has properly asserted her Fifth Amendment privilege against self-incrimination as to both oral testimony requested by the Trustee and as to the Trustee's requests for production of documents and records of the Debtor. This being the case, the Court must conclude that the Motion to Require Debtor to Answer Questions and Produce Documents filed by the Trustee on July 10, 2001, must be denied at this time. The Court further finds that, in order for the Debtor to be required to testify and produce any documents and records, the Trustee must seek immunity from prosecution for the Debtor as outlined under 18 U.S.C. § 6003.

ENTERED: September $\underline{4}$ , 2001.

GERALD D. FINES
Chief United States Bankruptcy Judge

8

COPIES TO:

DONNA J. ERICSON
1708 - 53rd Street, Apt. #3
Moline, Illinois 61265
                     Debtor

MR. RICHARD E. BARBER
318 Hill Arcade
250 East Main Street
Galesburg, Illinois 61401
                     Chapter 7 Trustee

MR. RICHARD A. BOWERS
P.O. Box 3760
Rock Island, Illinois 61204-3760
                     Chapter 13 Trustee

U.S. TRUSTEE
401 Main Street, Suite 1100
Peoria, Illinois 61602

2

**FILED**

TIME _____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

AUG 1 7 2000

HARDIN W. HAWES, Clerk
U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

```
IN RE:                           )
                                 )
                                 )
    DONNA J. ERICSON,            )        No. 98-82365
                                 )
                   Debtor.       )
```

## O R D E R

Upon further review following the hearing conducted on August 3, 2000, this Court has decided that all pending matters unrelated to the Notice of Appeal filed May 30, 2000, should be set for hearing on September 28, 2000, and the Clerk is so directed. Having been notified that the Debtor is scheduled for cardiac bypass surgery on August 28, 2000, if this Court receives written verification from the Debtor's surgeon, Dr. Philip R. Seaver, Jr., that the surgery has occurred on that date, the hearing will be continued and rescheduled by the Court. If no written verification of the surgery is received by the Court from the surgeon on or before September 14, 2000, the hearing will be held as scheduled.

ENTERED: August __17__, 2000.

THOMAS L. PERKINS
UNITED STATES BANKRUPTCY JUDGE

Copies to:
Mrs. Donna J. Ericson, 2361 - 39th Street, Rock Island, Illinois 61201
Dr. Philip R. Seaver, Jr., Cardiac Surgery Associates, 2570 - 24th Street, Suite 125, Rock Island, Illinois, 61201
Mr. Richard E. Barber, 318 Hill Arcade, 250 East Main Street, Galesburg, Illinois 61401
Mr. Robert H. Alvine, 501 - 15th Street, Room 503, Moline, Illinois 61265
Mr. James Magill, Assistant United States Trustee, Becker Building, Room 1100, 401 Main Street, Peoria, Illinois 61602

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

JOHN W. HAWES, CLERK
U.S. BANKRUPTCY COURT
CENTRAL ILLINOIS DISTRICT

2003 DEC 19 P 2: 36

FILED

IN RE:                                )
                                      )
DONNA J. ERICSON,                     )    Bankruptcy Case No. 03-83019
                                      )
                        Debtor.       )
                                      )
_____)
                                      )
DONNA J. ERICSON,                     )
                                      )
                        Plaintiff,    )
                                      )
            vs.                       )    Adversary Case No. 03-8157
                                      )
R. VICTOR HANKS and                   )
GENEVIEVE M. HANKS,                   )
                                      )
                        Defendants.   )


## O R D E R

On December 17, 2003, Judge Thomas L. Perkins disqualified himself from this

proceeding and referred it to the Chief Bankruptcy Judge for the Central District of Illinois

for reassignment.

This matter is hereby assigned to Chief Judge Gerald D. Fines. This matter will be

set for status hearing before Chief Judge Gerald D. Fines in the near future.

ENTERED: December $\underline{19}$ , 2003.

GERALD D. FINES
Chief United States Bankruptcy Judge

·5·1

COPY OF ORDER SENT TO:

Donna J. Ericson
1125-26th Street
Moline, IL  61265

Thomas A. Blade
620 Seventeenth Street
Moline, IL  61256

Richard A. Bowers
P.O. Box 3760
Rock Island, IL  61204-3760

U. S. Trustee
Becker Building, Room 1100
401 Main Street
Peoria, IL  61602

Hardin W. Hawes, Clerk
United States Bankruptcy Court
600 E. Monroe Street
Springfield, IL  62701

DATED:  December  $19$ , 2003.

Deputy Clerk

Title 2 Abstrac  10:715-369-9268          OCT 29 '98  16:26 No.033 P.02

# Seller's Closing Statement

|  |  |  | CN-39521 |
|---|---|---|---|
| Oneida Title & Abstract, Inc. | | | Mulleady Realty |
| 16 W. Davenport St. | | | |
| P.O. Box 98 | | | |
| Rhinelander, WI 54501 | | | |

Property Location: 8991 Thoroughfare Minocqua

Seller: Donna J. Erickson

3729 39th

Kathryn Av.

4713 Grand

Settlement Date: 7/10/98

Erickson-Smith

Banker Mulleady

| | AGENT'S SETTLEMENT WITH SELLER | Charges Against Seller | Due Seller |
|---|---|---|---|
| 1 | Credit or cash received from Buyer | | 294,176.58 |
| 2 | Earnest Money Paid by Buyer | | 3,000.00 |
| 3 | Title Policy - Oneida Title & Abstract, Inc. | 769.00 | |
| 4 | Recording Fees Warranty Deed | 11.00 | |
| 5 | Real estate transfer fee - Register of Deeds | 900.00 | |
| 6 | Satisfaction of Mortgage Register of Deeds | 11.00 | |
| 7 | Delinquent 1995, 1996 & 1997 Real Estate Taxes | 11,141.07 | |
|  | Oneida County Treasurer | | |
| 8 | Commission Coldwell Banker/Mulleady Realty | 21,000.00 | |
| 9 | Document Preparation Fee Oneida Title & Abstract, Inc. | 75.00 | |
| 10 | Mortgage payoff to Austin O. Hansen | 126,418.00 | |
| 11 | Mortgage payoff to Tamara E. Kendall | 51,617.81 | |
| 12 | Payoff Construction Lien LARSEN BROTHERS | 11,366.40 | |
| 13 | Pay to Bob Reuter d/b/a The House Doctor for Roof Repair | 610.00 | |
| 14 | Pay to Tom Johnson for Plumbing Repairs | 135.00 | |
| 15 | Record Satisfaction of Construction Lien Clerk of Courts | 3.00 | |
| 16 | Record Order Authorizing the Sale | 16.00 | |
| 17 | Record Satisfaction of Lis Pendens Register of Deeds | 11.00 | |
| 18 | **TOTALS** | **223,300.68** | **297,176.58** |
| 19 | TOTAL Charges Against Seller | → | 223,300.68 |
| 20 | Balance Due Seller | | 73,875.90 |

Use and Occupancy - Seller will assure $ __N/A__ for use and occupancy charge and $ __N/A__ to guarantee delivery of possession to Buyer unless prepaid to vacated by the Seller, which includes the day of vacating. Any balance of the escrow money will be returned to the Seller upon vacating and delivery of keys to Broker. Daily use and occupancy charge is $ __N/A__ Date of vacating this property will be __N/A__. Other - Seller certifies that no unpaid, all non-real estate items on the premises as agreed upon in the purchase agreement. Seller shall have all meters read prior to vacating and agrees to pay any delinquent or outstanding bills promptly upon receipt of such bill.

THIS STATEMENT IS ACCEPTED AS CORRECT  **October 29, 1998**

Oneida Title & Abstract, Inc. for
Coldwell Banker/Mulleady Realty

By Ranelle R. Robinson

**Donna J. Erickson**                      Seller

Seller

*Oneida Title & Abstract, Inc.*  P.O. Box 98  *Rhinelander, WI 54501*

**FILED**

TIME_____

UNITED STATES BANKRUPTCY COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA, ILLINOIS

JUL 17 2002

HARDIN W. HAWES, Clerk
U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

IN RE:                                              |

                                                    |    Chapter 7
DONNA J. ERICSON,                                   |    Case No. 98-82365

                                                    |
                     DEBTOR.                         |

---

## NOTICE OF HEARING ON TRUSTEE'S FINAL REPORT, PROPOSED DISTRIBUTION, AND APPLICATION FOR COMPENSATION

Richard E. Barber, Trustee, has filed the following application for compensation and account:

| 1. | | COMMISSIONS OR FEES | EXPENSES |
|---|---|---|---|
| Clerk, U. S. Bankruptcy Court | | | 337.00 |
| Richard E. Barber, Chapter 7 Trustee | | 7,301.96 | |

| 2. | The Trustee's account shows: | | |
|---|---|---|---|
| | Total Receipts of | $ | 81,039.24 |
| | Total Disbursements of | $ | 41,801.51 |
| | for a balance on hand of | $ | 39,237.73 |

These amounts may change slightly due to continuing accrual of interest on funds of the estate and unanticipated expenses.

3.    In addition to commissions and fees that may be allowed by the Court, liens and priority claims which must be paid in advance of general unsecured claims have been allowed in the total amount of $9,929.78.

General unsecured claims have been allowed in the amount of $185,474.23.

Claims subordinated to the payment in full of all timely filed unsecured claims have been allowed in the amount of $959.26.

000027   69902-27-692

U.S. Bankruptcy Court
Illinois Central (Peoria)

Bankruptcy Petition #: 98-82365

Date filed: 6/24/98
Assigned to: William V. Altenberger
Chapter 7 (voluntary)                    (no asset)

=======================                  * Attorneys *

DONNA J ERICSON                          Donna J Ericson
1708 53rd St #3                          PRO SE
Moline, IL 61265
SSN: 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
      * Debtor *

--------------------------

RICHARD BARBER
318 Hill Arcade Bldg
Galesburg, IL 61401
      * Trustee *

=======================                  * Attorneys *

TAMRA E KENDALL                          Joel K Heriford
      * Cross-Defendant *                POB 4300
                                         Rock Island, IL 61204
                                         309-794-9400

----------------------------------------------------
INTERNAL USE ONLY: Events between 1/1/31 and 6/23/99.

1/4/98    93    ENTRY INCORRECT. SEE DOCUMENT 106-1    Objection By Trustee
                Richard A. Bowers To Lien on monies held by trustee placed
                by atty Koenig. Certificate of Service. (thuf)
                [EOD 01/05/99] [Edit date 02/01/99]

6/24/98   1     Voluntary Petition. ;Proof of Claim (gov) Deadline:
                12/21/98   Filing Fee Received: $ 0.00 (rrob) [EOD 06/25/98]

6/24/98   2     Application By Debtor Donna J Ericson To Pay Filing Fee In
                Installments . (rrob) [EOD 06/25/98]

6/25/98   3     Incomplete Filings/Missing Documents:13plan. Due 7/10/98
                (rrob) [EOD 06/25/98]

6/27/98   --    Courts BNC Certificate of Service Re: [3-1] Order missing
                documents . # of Notices: 3. (bcap) [EOD 06/30/98]

Docket as of June 23, 1999 1:48 pm            Page 1   NON-PUBLIC

```
C:\Program Files\Century\TinyTERM\default.tpx - TinyTERM
File Edit View Tools Session Help

[docket  ]                          BONCAP                          [vdKttext]
4. Queries                         Docketing

                          Judge
 Docket #:   1  83019     gdf
 In re: Donna J Ericson
 Office code:1  Type:bk     Chapter:13  v  Assets:y  Disp:     Term:**/**/**
 ----------------------------------------------------------------------------



 Filed       Entry Date  Last Update       History ID      Docketed by
 2/17/04      2/17/04     2/17/04            4013956          Ktra
       +---------------------------------------------------------------+
       Notice of Continuance of judicial hearings originally
       scheduled on February 19, 2004 provided telephonically on
       2/13/04 by Tim Thorlton, Law Clerk to Judge Fines to the
       following:  Richard Bowers, Donna Ericson, and Thomas Blade
       Written Order to follow.
       +viewing docket text-----------------------------        --------+
 Transaction: ntc    / -/ - - -

 Command mode (? for commands)
```

# New Liberty woman admits to role in real estate scam

**By Clair Johnson**
BILLINGS GAZETTE

An Iowa woman who lived in Western Montana admitted in federal court to stealing more than a $1 million from Montana investors in an elaborate scheme that involved fraudulently brokering real estate contracts.

Susan L. Hill, 56, of New Liberty, Iowa, pleaded guilty in Billings last week to all charges in a 43-count indictment that alleged 23 counts of wire fraud, five counts of mail fraud, 14 counts of money laundering and a forfeiture count.

Hill told U.S. District Judge Richard Cebull that she learned early while working in the escrow business that she could record a deed contract as paid off and resell it to another investor. "And it could be done over and over again," she said.

To carry out the scheme, Hill used the identities of other people, including some who had died, made up names, forged signatures on real estate title documents, operated a mail drop box and lied to everyone involved in the transactions, said U.S. Attorney Bill Mercer.

By the time the scam collapsed in 1999, Mercer said, investors had made payments on real estate contracts but had no interest in any real property. Prosecutors said Hill bilked investors of $1.2 million.

He said there is a legitimate market in buying and selling a seller's interest in contracts for deed. A mortgage banker usually finds a seller in a contract-for-deed real estate transaction willing to sell the stream of payments required by the contract for a negotiated lump sum payment. The mortgage banker then finds an investor willing to pay a lump sum for the stream of payments calculated to return a certain yield, or percentage, on the investment. The deals usually are closed through independent escrow companies.

These independent escrow companies ensure that the title documents are properly exchanged and recorded and that the money is properly distributed at closing. The escrow services often serve as the conduit of money in the deals and the original seller of the property is rarely informed of the investment transaction.

Investigators with the FBI and the IRS investigators said Hill was working for Mountain Escrow of Whitefish, Mont. and

in 1989 bought the company and moved it to Hamilton. Hill renamed the company Mountain Financial Services and conducted business there until 1992, when she changed the company's name to Cloverhill Mortgage Group and moved it to Durant, Iowa.

Hill operated the escrow business out of her home and had access to all the title documents and payment histories in numerous real estate contract-for-deed transactions. Investigators said a common thread among the contracts is that they originated from Montana banks that failed in the late 1980s.

Mercer said access to the legitimate title documents and payment histories allowed Hill to falsely represent a seller's interest for sale or obtain early payoffs from buyers, convert the money for her own use and hide the payoff by making monthly payments to the seller. Many of the fraudulent transactions, he said, were made through legitimate mortgage banking businesses, while some of the deals were done directly with a victim investor.

Clair Johnson is a reporter for the Billings (Mont.) Gazette. The Quad-City Times city desk can be contacted at (563) 383-2245

In Re:                                    )    Case No. 03-83019
                                          )    Honorable Judges Perkins,    AUG 1 0 2004
                Donna J. Ericson    )    Fines
                                          )    Appeal No. 04-4043          U.S. OF OFFICE
                Debtor                    )    Honorable Judge McDade    ROCK ISLAND, ILLINOIS

## STATEMENT OF ISSUES TO BE PRESENTED

NOW COMES, Donna Ericson, Appellant, Debtor, pro se and
states the following issues to be presented in this appeal:

The Debtor/Appellant was unjustly barred from her rights to
file bankruptcy and wrongly accused.

The issue began with the alleged fraudulent filing of a
Chapter 7 case in August 1996, by the then spouse of 20
years, Robert L. Ericson, Sr.

The Ericson's were NEVER bankrupt, had $360,000.00 equity in
appraised value in real estate of $730,000.00 in Illinois
and Wisconsin.  Mr. Ericson was diagnosed (manic/depressive,
with severe passive agressive disorder).  There was rental
property income of approximately $24,000.00 annually, and
resort income.  Mr. Ericson had a $45,000 a year pension and
social security income of approximately $13,000 annually in
1996.  In 1997 his income tax filings showed earnings of
over $65,000 a year.  He was working in 1996 for the
Alliance for the Mentally Ill plus living there.  He also
worked for Sears.

The court failed to hold competency hearings on Robert
Ericson, caused Donna Ericson to file a Chapter 13, in
January 1997, trustees Magill and Anderson devised a scheme
for Donna Ericson to give them $10,000.00 for Mr. Ericson's
Chapter 7, and sold her all the debt, while she was in a
Chapter 13.  The trustees listed a few debts on Mr.
Ericson's 7 and he was given a discharge stating a 100%
asset case and Mrs. Ericson was left "holding the bag".
Actually, the debts were laundered totally to Donna Ericson,
the female spouse.

Mrs. Ericson has been provoked to file bankruptcies, was
terrorized often by James Magill and Richard Barber because
she has truthfully, in good faith, defended herself, and the
trustees wasted away $360,000.00 in assets and a whole
life's work.

The monies of the estate, in essence, were diverted to
attorneys, some lawyers were allowed to become unsecured
creditors when they were over secured, so they could get the
cash.  Other unsecured creditors were discriminated against

and the lawyer were allowed to file infla  d and false
bills and were not required to proove anything.

Donna Ericson, due to the bankruptcy fraud of Mr. Ericson
which the court ignored and allowed, must live in poverty,
have a life of bankruptcy, for the sake of lawyers' prey.

Mrs. Ericson was able to save $74,000.00 and place the funds
in trust with trustee R. Bowers and got a confirmed plan in
early 1999 with the creditors to receive 70%. However,
because Donna Ericson alerted the IRS and requested
intervention, Judge Altenberger involuntarilly converted
Ericson to a chapter 7 on "needs direction" inspite of the
IRS admiting in open court, their "Objection to the
Confirmed Plan" was improper. Trustee's Magill and Barber
filed a malicious suit against Ericson, which was bared by
estoppel, (bait and switch) and wasted the assets of the
estate, holding the money for four (4) years, reducing
payment to unsecured creditors to 11.68%.

The Wisconsin creditors basically were paid 100% through
Ericson's sale of the "Hemlocks Resort" in 1998; undermining
the current order of Judge Fines. Donna Ericson's good
faith also sold 1617-12th Street, Moline for approximately
$63,000.00 in the 1997 Bankruptcy Case and the Rock Island
Bank literally ran off with the money. (attorney S. Andich)
She also secured buyers for 5302 - 11th Ave C, Moline, 3729
- 39th Street Court, and 1118-17th Avenue, Moline.

Other issues of law are the violation of law in some of the
rulings of the court.

A disgruntled Chapter 13, trustee has colluded with Attorney
Blade, and James Magill, as he states in the transcript "I
never got a cent ", in reprisal, and violated his duties as
trustee.

Donna Ericson's other issues to be presented are sex
discrimination and reprisal, the destruction of evidence,
the UNCONSTITUIONALITY of the Lowell D. Nelson Case, and the
UNCONSTITUIONALITY of the 1996 Bankruptcy Case of Robert
Ericson, Sr., wife in Chapter 13 Bankruptcy Case Jan 1997,
trustees selling wife all the debt of the husband and her
having to borrow $10,000.00 to pay for the husband's
fraudulent Chapter 7, and he gets a 100% asset case with a
full discharge in 1998. The sale to wife was an improper and
fraudulent transfer of real estate by the trustees. The
U.S. Constitution states that Congress shall pass no law,
which abridges the rights of the people.

Donna Ericson has always functioned in good faith, good
character, and believes she never has abused the filing of
bankruptcies, but did the only thing she could, under equal
protection of the law.

Because there was no prior case anywhere, providing
precedent, Ericson believes this case qualifies to be heard
by the Supreme Court of the United States of America.

DONNA J. ERICSON
Appellant/Debtor/pro se

967-40th Street
Moline, IL  61265
(309) 736 9190

UNITED STATES BANKRUPTCY COURT
Central District of Illinois

In Re:                          )   Case No. 03-83019         AUG 1 0 2004
                                )   Honorable Judges Perkins
        Donna J. Ericson        )   and Fines              U.S. CLERK'S OFFICE
                                )   Appeal No. 04-4043    ROCK ISLAND, ILLINOIS
        Debtor                  )   Honorable Judge McDade

APPELLANT'S DESIGNATION OF ITEMS

Appellant/Debtor, pro se, Donna Ericson submits the
following designation of items and additions:

All docket sheets from all bankruptcy cases at issues in the
order and bar of Judge Fines.

Docket Sheets from Western District Wisconsing Bankruptcy
Case

Bankruptcy Dockets from former spouse alleged fraudulent
Chapter 7, August 1996.

Appraisals from Koestner Appraisal, specifically 3729 - 39th
Street Court at $230,000, Fall of 1996.

Affidavit of Donna Ericson regarding Asst. U.S. Trustee
Magill and Anderson regarding pay them $10,000.00 in R.L.
Ericson's Case.

Tape recordings from the "in camera session" Judge Fines in
case 98-82365.

Tape Recording Judge Perkins hearing hearing about Nov.
2003.

Tape Recording David Osbourn, States Attorney's office 1996
left on answering machine of Donna Ericson. (I will certify
and declare under oath the authenticity of it).

Opinion of Judge Fines in Case 98-82365.

Letters to Rock Island Bank from the Comptroller of the
Currency, Illinois

1998 IRS stamped filed 16 February 1999, signed tax return,
prepared by IRS in Davenport, IA.

Rock Island Arsenal Credit Union bank statement of Robert L.
Ericson, Sr. showing a withdrawal of $2,000.00 cash August
1996.

Statements and   lls of cash expenditures . 70 Ford Truck
from Ed's Auto done by Robert L. Ericson, Sr. in August and
September 1996;

Schedule J forgery signature of Robert L. Ericson, Sr. on
his 1996 bankruptcy petition.

Affidavit Donna Ericson of the $1,000.00 cash passing across
the table in the Federal District Court Building, Rock
Island, IL, by Robert Alvin, Attorney for First National
Bank on February 4, 1999, Case 98-82365.

Receipts of Monies paid to Martha Easter Wells by Donna
Ericson.

Proof of $10,000.00 had to borrow to pay Trustee,Richard
Barber for Mr. Ericson's bankruptcy.

Lowell D. Nelson published opinion by Judge Altenberger.

Docket Sheet Case 98-82365 stating "Voluntary Chapter 7"
case 98-82365 and "NO ASSETS" (but in fact $81,000.00 in
trust.)

Letter Richard Barber, Trustee to Ericson, improper for him
to take the 1995 tax refund.

Letter Richard Barber, Trustee regarding the sale of R.L.
Ericson Sr. share of real estate to Donna Ericson stating
she was not in bankruptcy when in fact she was.

Closing statements from the sales of 1617-12th Street,
Moline; the Hemlock's Resort, Minocqua, WI, 5302 - 11th Ave,
C, Moline.

Philip Koenig's Closing statement 5302 - 11th Avenue C,
Moline and Title Insurance Fees paid him by Ericson.

Receipt from Philip Koenig, attorney, of $1,000.00 cash paid
him as earnest money in sale of 5302 - 11th Ave C., Moline,
July 1998.

Letters from D. Ericson to FBI and Department of Treasury
regarding Investigation of Bankruptcy Fraud.

First National Bank's statements of real estate balances on
loans year 1996.

Adversary Suit James Magill/Richard Barber, and certified
Tape Recordings from the U. S. Attorney's office of the
meetings of creditors 2000. (4).

Receipt of payment of personal property taxes to Rock Island
County Treasurer, by Donna Ericson 1998.

Letter from attorney Robert Alvine to Donna Ericson where he "took" monies Donna Ericson paid for her house payment to First National Bank by Ericson for himself.

December 2 and December 3, 1998 records of hearings Judge Altenberger, 98-82365.

Letter from McGladery Pullen Accounting firm documenting conversation with Trustee Richard Bowers, 98-82365.

1995, 1996, 1997, 1998 tax returns, Donna Ericson.

Case 96 D 221 order to file 1995 with Robert L. Ericson, Sr. after already having filed individually.

The Objection to Confirmation of Plan by IRS, February 1999, Gerard Brost and Objection to the Objection filed by Donna Ericson, Case 1998.

Affidavit filed by Ericson about Trustee Bowers.

Order filed by Judge Perkins 98-82365 against Heart Surgeon, Philip Seaver regarding Ericson's quadruple by-pass - August 2000.

Obituary, January 31, 1995, Ericson's son Tony.

All documents received from Tim, the law clerk to Judge Fines.

*AFFIDAVIT & CARD S. VAIANA.*

Respectfully submitted by:
Donna J. Ericson

967 - 40th Street
Moline, IL
(309) 736-9190